620 F.2d 464
 Ernest J. RAMOS et al., Plaintiffs, Cross-Claimants and
Intervenors-Appellants,
v.
LIBERTY MUTUAL INSURANCE COMPANY et al., Defendants,
Shell Oil Company et al., Defendants-Appellees.
HAROLD LEE ENGINEERING CO. et al., Cross-Claimants and Third
Party Plaintiffs-Appellants,
v.
LIVINGSTON CORPORATION et al., Cross-Claimants and Third
Party Defendants-Appellees.
 No. 78-1549.
 United States Court of Appeals,
Fifth Circuit.
 June 30, 1980.
 
 Francis E. Mire, J. L. Cox, Jr., Lake Charles, La., for Ernest J. ramos.
 
 
 1
 Jones, Patin, Harper, Tete & Nolen, William M. Nolen, Lake Charles, La., for Harold Lee Engineering Co.
 
 
 2
 Raggio, Farrar, Cappel & Chozen, Richard B. Cappel, Lake Charles, La., for Gardner-Denver Co.
 
 
 3
 Woodley & Fenet, Edmund E. Woodley, Lake Charles, La., for Shell Oil Co.
 
 
 4
 Brame, Bergstedt & Brame, Frank M. Brame, Lake Charles, La., for Oil Field Rental Service Co.
 
 
 5
 James E. Diaz, Lafayette, La., for The Rucker Co.
 
 
 6
 Appeals from the United States District Court for the Western District of Louisiana.
 
 
 7
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 
 8
 (Opinion April 11, 1980, 615 F.2d 334 (5th Cir. 1980))
 
 
 9
 Before TUTTLE, FAY and THOMAS A. CLARK, Circuit Judges.
 
 PER CURIAM:
 
 10
 This action concerns the claims and cross-claims of multitudinous parties over the collapse of a mast on an off-shore oil rig. On appeal, this court affirmed the grant of summary judgment to Oil Field Rental Service Company, and reversed and remanded the other final judgments. 615 F.2d 334 (5th Cir. 1980). Rucker Company and Stewart & Stevenson Services, Inc. petition for rehearing of the reversal of directed verdicts in their favor. Harold Lee Engineering Company and Gardner-Denver Company request that their cross-claims against Shell be decided favorably for them without remand, and that this court reconsider its reversal of the trial court's evidentiary rulings. Livingston Corporation, formerly Gulf States Fishing & Rental Tools, Inc., moves for clarification of whether the summary judgment in its favor has been reversed. Other parties who did not petition for rehearing have cross-appeals and judgments affected by the decision. We now clarify our previous decision to specify which judgments have been reversed.
 
 A. Lee and Gardner-Denver
 
 11
 Lee and Gardner-Denver urge that Shell's liability to indemnify them should be decided by this court without remand. Because the district court has not ruled on the duty of any owner to indemnify parties under Louisiana Civil Code Art. 2322, we remand that issue to the district court for determination during the retrial of this case.
 
 
 12
 Requests by Lee and Gardner-Denver for rehearing on the reversal of the trial court's evidentiary rulings are denied.
 
 B. Livingston Corporation
 
 13
 Lee, Gardner-Denver, and Shell appealed the grant of summary judgment to Livingston Corporation, formerly Gulf States Fishing & Rental Tools, Inc., although none of the parties discussed Livingston's liability in their briefs, at oral argument, or in petitions for rehearing. One theory advanced for why the mast collapsed was that a shock force to the rig was caused by the presence of "junk in the hole," left there by Gulf States after its "down hole" operations. The district court found that
 
 
 14
 after exhaustive discovery, there is no evidence of "junk." In fact, the only viable evidence disclosed . . . establishes that there was no "junk" in the hole.
 
 
 15
 Record, vol. 14, at 4076-77. Experts which Lee and Gardner-Denver themselves supplied stated that the "junk" theory was "very unlikely," was "not a viable possibility," and was excluded by the joint-hitting-the-rams theory. Record, vols. 12 & 13, at 3526, 3551, 3559-63, 3628-29, & 3631-33. The pipe being moved at the time of the accident was at the 370 to 450-foot level. Earlier that day, Booker employees had used a cementing squeeze tool to the 890-foot level without meeting resistance, which indicates that no "junk" was in the hole. Record, vols. 11 & 12, at 3456, 3559-63. The only evidence that supports in any way a "junk" theory is that operations fishing for "junk" had gone on, that the driller claims to have opened the rams, that the rams worked after the incident, and that one expert claims the indentations on the tool joint do not match those on the rams. Can such evidence negativing the joint-hitting-the-rams theory raise sufficient inferences that the pipe caught on "junk" in the hole to make this a jury issue? We think not. The undisputed positive fact that the drilling hole was clear to a level of at least 890 feet eliminates any doubt about the presence of "junk" at a higher level. The district court did not err in granting summary judgment to Livingston and Gulf States.
 
 C. Contribution and Indemnity Claims
 
 16
 Although not all of the cross-appellees petitioned for rehearing, to remove further doubt about the scope of this court's earlier decision, the judgments on the contribution or indemnity claims in favor of Gardner-Denver, Lee, Shell Oil, Booker Drilling Company, and Pittsburgh Testing Lab are reversed. The district court granted these verdicts because the jury verdict against the plaintiffs rendered the third-party claims moot. Record, vol. 14, 4220-21. Since the jury verdict is reversed, these claims are again viable.
 
 D. Rucker and Stewart & Stevenson
 
 17
 After presentation of the evidence, the trial court granted directed verdicts to Rucker, the pipe rams manufacturer, and Stewart & Stevenson, the accumulator system manufacturer. Docket Entry for July 18, 1977. Shell, Lee, and Gardner-Denver cross-appealed these verdicts to protect themselves in the event of reversal of the jury verdict. The plaintiffs dismissed their appeals of the verdicts for Rucker and Stewart & Stevenson. Therefore, the only question before this court is whether there was a conflict in substantial evidence sufficient to create a jury issue on the liability for contribution or indemnity of Rucker and Stewart & Stevenson to Shell, Lee, and Gardner-Denver.
 
 
 18
 This question distills to an inquiry into evidence presented on the cause of the drilling mast's collapse. Once the "junk"-in-the-hole theory is eliminated, three hypotheses on the cause remain.[1]
 
 
 19
 The first is that design or construction defects are the main cause of the mast's collapse. Supporting this theory was testimony by plaintiffs' experts that the design load was below the mast's capacity. On retrial, evidence of failure of GO-4, a mast of similar design, will also be used to support this theory. Experts for Lee and Gardner-Denver contradicted testimony on design and construction defects and stated that the shock load was above the mast's capacity.
 
 
 20
 The second theory is that operator error caused the collapse. Under this theory either the driller did not pull the switch to open the rams, he did not allow enough time for the rams to open before pulling up the pipe, he moved the switch into the neutral not open position, or someone at the remote control station closed the rams after the driller had opened them. Because of one of these errors, the tool joint hit the closed or partially opened rams, causing the shock load which led to the mast's collapse. The indentations on the pipe rams and the defendants' experts' testimony that the angle of indentation on the tool joint matches that on the rams support this theory. Opposing this theory was evidence of one expert that the markings and indentations of the joint and rams did not match, evidence that the rubber portion of the rams was not scarred as would be expected if this occurred, and the driller's testimony that he opened the rams, started up the pipe a sufficient time later, and observed that the rams were open about one-half hour after the accident.
 
 
 21
 The third theory is that the driller did throw the switch, but that some defect in the rams or accumulator caused the rams not to open or to open too slowly. Under this theory, Rucker or Stewart & Stevenson caused the collapse. The evidence for and against the second theory is also relevant to the third. In addition, a government inspector may have found a defect in the blowout preventor earlier during the day of the accident, but the system was reportedly brought to government standards. Rucker and Stewart & Stevenson contend that testing which showed that the rams worked perfectly both before and after the incident negatives this theory.
 
 
 22
 As should be apparent, the proof on causation is replete with the conflicting testimony of experts and the haunting possibilities raised by circumstantial evidence. For our purposes, the question is the extent to which these conflicts and circumstances are substantial enough to create a jury issue precluding a directed verdict.
 
 
 23
 Rucker and Stewart & Stevenson argue that the perfect performance of the rams both before and after the collapse leads to the inference that no defect was present. Furthermore, they claim that because the cross-claimants proved no specific defect in the rams or accumulator, the directed verdict was proper. The cross-claimants argue that no specific defect need be shown. They assert that it is the jury's province to decide whether operator error or mechanical defect caused the shock load.
 
 
 24
 Viewing all reasonable inferences in the light most favorable to the cross-appellants, we hold that more than "a mere scintilla of evidence" has been presented against Rucker and Stewart & Stevenson and that a sufficient conflict exists in the substantial evidence to raise a jury question. See Boeing Company v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc). The directed verdicts for Rucker and Stewart & Stevenson are reversed.
 
 E. Conclusion
 
 25
 The petitions for rehearing by Lee Gardner-Denver, Rucker, and Stewart & Stevenson are DENIED. The district court's grants of summary judgment to Oil Field Rental Service and Livingston Corporation Gulf States Fishing & Rental Tools, Inc. are AFFIRMED. The other verdicts and judgments are REVERSED and the matter is remanded for retrial in accordance with this court's earlier opinion.
 
 
 26
 No member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is DENIED.
 
 
 
 [1]
 At one point, some experts proffered a fourth hypothesis, that the pipe caught on a hole in the casing, but no evidence was presented on this theory
 Although the theories are listed separately, the amount of the shock load interconnects the design theory and the pipe ram theories. If the load exceeded the mast's capacity, it may be irrelevant whether Lee designed a faulty mast. If the load was less than capacity, the question is whether the incident was proximately caused by a design defect, some negligence connected with the rams, or both.