847 F.2d 1261
 25 Fed. R. Evid. Serv. 1153
 Edward E. NACHTSHEIM, Personal Representative of the Estate
of William W. Steil, and Production Tool
Corporation, a domestic corporation,
Plaintiffs- Appellants,
v.
BEECH AIRCRAFT CORPORATION, a Delaware corporation,
Defendant-Appellee.
 No. 87-1155.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 5, 1987.
Decided May 26, 1988.
Rehearing and Rehearing En Banc Denied June 23, 1988.
 
 Ronald M. Wawrzyn, Foley & Lardner, Milwaukee, Wis., for plaintiffs-appellants.
 Michael R. Wherry, Mulcahy & Wherry, S.C., Milwaukee, Wis., for defendant-appellee.
 Before CUMMINGS, RIPPLE and MANION, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 The plaintiffs, Edward E. Nachtsheim and Production Tool Corporation (Production Tool), brought this products liability action against the defendant, Beech Aircraft Corporation (Beech). Jurisdiction was based on diversity of citizenship, 28 U.S.C. Sec. 1332. The suit arose from an aircraft accident in which the deceased, William W. Steil, was killed. Mr. Steil was the President of Production Tool. He was piloting a company aircraft on January 8, 1978 when the plane crashed near Tylertown, Mississippi.
 
 
 2
 The case was tried to a jury on theories of negligence, strict liability, and failure to warn. Mr. Steil's estate sought damages for wrongful death; Production Tool sought damages for the value of the aircraft. After a two-week trial, the jury returned a verdict in favor of the defendant. The district court entered judgment in accordance with the verdict and subsequently denied the plaintiffs' motion for a new trial.
 
 
 3
 In this appeal, the plaintiffs challenge under Federal Rule of Civil Procedure 61 a number of the district court's evidentiary rulings.[1] After reviewing the record and considering each of the challenged rulings, we conclude that there is no basis for granting the requested relief. We therefore affirm the judgment of the district court.
 
 
 4
 * Background
 
 A. The Crash
 
 5
 On the afternoon of January 8, 1978, Mr. Steil prepared to fly himself and three passengers from New Orleans, Louisiana to Milwaukee, Wisconsin. Shortly before taking off, he obtained a weather briefing from the New Orleans Flight Service Station. The Flight Service Station informed him that moderate to severe turbulence could be expected between altitudes of 12,000 and 25,000 feet over Louisiana, Mississippi and Tennessee. R.175 at 93. The Flight Service Station also mentioned the presence of moderate rime icing[2] with mixed freezing drizzle throughout his planned route of flight, as well as ice pellets on the ground in the area of Jackson, Mississippi. Id. at 93-94.
 
 
 6
 The Steil plane took off from New Orleans at 3:44 p.m. Immediately after takeoff, the airplane began climbing from an initial altitude of 2,000 feet to an altitude of 4,000 feet. Shortly thereafter, Mr. Steil received clearance to climb to 8,000 feet. Id. at 95. At approximately 4:12 p.m., Mr. Steil contacted the Houston Air Route Traffic Control Center (Houston Center) and indicated that he was at 7,000 feet and beginning to pick up ice. He requested clearance to ascend over the clouds. Id. at 96. Houston Center cleared the Steil craft to an altitude of 11,000 feet, and Mr. Steil acknowledged the clearance. Id. at 97. Two minutes later, Houston Center reported that it had lost the airplane on radar. About this time, an eyewitness on the ground sighted the airplane coming out of the clouds. Moments later, the airplane crashed into a forested area, disintegrated and burned. There were no survivors.
 
 B. The Investigation
 
 7
 The National Safety Transportation Board (NTSB) conducted an investigation of the crash. Several witnesses to the crash were interviewed. The NTSB accident report summarized the statements of these witnesses:
 
 
 8
 Witnesses reported, in essence, that the engines or engine were making a surging or cyclic up and down type sound. The sound was heard before the aircraft came into view below the clouds and continued until the impact sound. The aircraft came out of the overcast in a nosedown wing level dive of about 45 degrees. A steep left bank was observed with the aircraft still descending. The aircraft disappeared behind trees still moving at a high speed before it was heard crashing through trees. The sound of an explosion was heard after the sound of impact with trees.
 
 
 9
 An eye witness [sic] located about 200 yards southwest of the crash site estimated the cloud ceiling at about 1200-1400 feet and a strong gusty west wind. Prior to the accident it was hazy and about 30-45 minutes after the accident, a light freezing rain started. The weather later cleared from the west and was clear at the accident scene by nightfall.
 
 
 10
 Plaintiffs' Ex. 1-Defendant's Ex. 580 at 14. The NTSB report did not reach any conclusion as to the cause of the crash. However, a separate report filed by a Beech employee who was part of the NTSB investigating team concluded that: "The aircraft lost control due to either ice or pilot inattention. I believe pilot inattention was the problem, because the aircraft had deicing equipment and only light icing was reported." Plaintiffs' Ex. 5-Defendant's Ex. 581 at 10.
 
 C. The Aircraft
 
 11
 The Steil aircraft was a Beech Baron 58P. It was sold by Beech to Hartzog Aviation in Rockford, Illinois in March 1976. Hartzog used the airplane as a demonstrator during 1976 and 1977 and subsequently sold it to Production Tool. At the time of the sale, the plane had accumulated 174 hours of flight time. R.175 at 90-91. All of the maintenance work done on the aircraft while it was owned by Production Tool was done by Hartzog which was not a party to the action. R.183 at 259.
 
 
 12
 The Federal Aviation Agency (FAA) has certified the Baron 58P for flight into known icing conditions when equipped according to the manufacturer's pilot's operating handbook and the FAA approved airplane flight manual. The Steil plane was properly equipped when Production Tool purchased it in March 1977. R.175 at 98. Nevertheless, the plaintiffs proceeded at trial on the theory that the design of the Baron 58P rendered it unsafe for flight in icing conditions. This theory centered on the elevator, a flight control mechanism located at the rear of the plane. The elevator is a movable control surface which is attached to the fixed, horizontal portion of the tail called the stabilizer. The gap between the elevator and the horizontal stabilizer is called the cove gap. Id. at 184-87. The position of the elevator controls the rise or fall of the nose of the plane in relation to the tail, otherwise known as the plane's pitch. R.180 at 56.
 
 
 13
 The Baron 58P has a pointed elevator horn which is partially shielded from the airstream by the stabilizer portion of the tail. However, when the elevator is moved, its leading edge protrudes from its streamlined position behind the stabilizer. It is then exposed to the airstream. Appellants' Br. at 9. By way of contrast, this design differs from two alternative elevator systems found in other aircraft and described respectively as a classic shielded and a classic unshielded configuration.
 
 
 14
 Defendant's Ex. 663.
 
 
 15
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 D. The Trial
 
 16
 The plaintiffs' theory of the case was presented at trial primarily by their expert witness, Professor Donald Kennedy. Professor Kennedy testified that the Steil airplane had stalled.[3] When an aircraft stalls, the pilot must use the elevator to lower the nose and thereby restore the proper airflow. According to Professor Kennedy, Mr. Steil was unable to recover from the stall because ice had accumulated in the cove gap due to the elevator's exposure to the airstream. The ice buildup prevented Mr. Steil from using the elevator to regain pitch control. R.180 at 56. In short, Professor Kennedy testified that, in his opinion, the primary cause of the Steil crash was a frozen elevator. Id. at 78. He concluded that, because the tail section design of the Beech Baron 58P allows the elevator to become frozen in icing conditions, it is unreasonably dangerous. Additionally, he concluded that the Steil accident could have been prevented had Beech warned Mr. Steil of methods of preventing the elevator from jamming with ice. R.181 at 81.
 
 
 17
 Beech contended at trial that the crash was the result of pilot error. Beech agreed with Professor Kennedy that Mr. Steil had stalled the aircraft at about 8,000 feet while attempting to climb to 11,000 feet. See R.180 at 55a. However, Beech disagreed about what happened after the stall. According to one of Beech's chief engineers, the Baron 58P cannot be stalled without a movable elevator because the airplane cannot sufficiently change its angle of attack to occasion the stall. R.175 at 168. Beech thus contended that the crash was not the result of a frozen elevator. Rather, Beech argued that Mr. Steil became spatially disoriented following his loss of control of the airplane. Spatial disorientation is a phenomenon in which a pilot becomes confused as to the actual altitude of his aircraft in relation to the earth by reason of the plane's immersion in the clouds. "When spatially disoriented it is very common for a pilot to be in a turn and actually not know it. Upon exiting the clouds, the pilot usually experiences nystagmus and severe confusion whereby he is unable to clearly focus on the instruments." Appellee's Br. at 9 (citations omitted). Beech maintained that it was because of this spatial disorientation, and not because of a frozen elevator, that Mr. Steil was unable to recover from the stall.
 
 II
 Standard of Review
 
 18
 The plaintiffs' attack on the district court's judgment is predicated upon their assertion that the court made several erroneous evidentiary rulings during the course of the trial.[4] Accordingly, we are not concerned with whether the record supports the verdict. See Jackson v. Firestone Tire & Rubber Co., 788 F.2d 1070, 1075 (5th Cir.1986). Rather, our review is limited, under Federal Rule of Civil Procedure 61, to whether an "error in either the admission or the exclusion of evidence" was made which affected "the substantial rights" of the plaintiffs. Fed.R.Civ.P. 61; see Diede v. Burlington Northern R.R. Co., 772 F.2d 593, 594 (9th Cir.1985) (court will not overturn a ruling that admits or excludes evidence, even if the trial court abused its discretion, if the error is harmless).
 
 
 19
 As a general proposition, our standard of review in determining whether the district court made an error in either the admission or exclusion of evidence is abuse of discretion. United States v. Garner, 837 F.2d 1404, 1416 (7th Cir.1987); Davis v. Lane, 814 F.2d 397, 399 (7th Cir.1987); United States v. Gentile, 816 F.2d 1157, 1161 (7th Cir.1987); Webb v. City of Chester, 813 F.2d 824, 827 (7th Cir.1987); United States v. Peco, 784 F.2d 798, 800 (7th Cir.), cert. denied, 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986). "Under the 'abuse of discretion' standard of review, the relevant inquiry is not how the reviewing judges would have ruled if they had been considering the case in the first place, but rather, whether any reasonable person could agree with the district court." Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 563 (7th Cir.1984) (emphasis in original). However, where the district judge's decision to exclude or admit the evidence "is based solely on the resolution of a legal issue, not subject to the district judge's discretion, then our standard of review is not abuse of discretion, but rather is de novo." Gentile, 816 F.2d at 1161 (citing Petrucelli v. Coombe, 735 F.2d 684, 690 (2d Cir.1984)); cf. Deitchman, 740 F.2d at 563 ("a judge abuses his discretion when his decision is based on an erroneous conclusion of law"). With these principles in mind, we now turn to the specific rulings challenged by the plaintiffs in this appeal.
 
 III
 Discussion
 A. The St. Anne Accident
 1. Background
 
 20
 The plaintiffs' first evidentiary contention is that the district court erroneously excluded evidence of an accident that occurred near St. Anne, Illinois in 1979. The St. Anne crash involved a model 58TC Baron.[5] The plane took off at approximately 8:18 p.m. and crashed at 8:39 p.m. There were no survivors. Shortly before the crash occurred, the pilot reported that his autopilot had become "a little rambunctious," Ex. 29; Appellants' App. at 120, and that he was "having a 'problem' with ice," id. at 119. Although the weather report for that evening did not include an ice advisory, a few pilots on the same route had reported some light ice. The NTSB accident report stated that, "[a]lthough it could not be verified, it is suspected [the St. Anne plane] was in instrument, icing, meteorological conditions at the time of occurrence." Id. at 119. The St. Anne plane was initially cleared for a cruising altitude of 11,000 feet and was at 15,000 feet when the accident occurred. The aircraft impacted in a 70 or 80 degree nosedown, near-vertical descent and exploded almost immediately upon impact. Id. at 118.
 
 
 21
 The plaintiffs argue that the St. Anne accident was substantially similar to the Steil crash and, therefore, that testimony concerning the St. Anne accident should have been admitted. The plaintiffs submit that the following similarities between the St. Anne accident and the Steil crash justify their position: (1) the parties stipulated to the fact that the St. Anne plane and the Steil plane were identical aircrafts for purposes of this case; (2) both the St. Anne pilot and Mr. Steil were instrument-rated pilots; (3) both the St. Anne flight and the Steil flight "occurred in instrument conditions and, specifically, in an icing environment," Appellants' Br. at 24; (4) in each case there was a reported accretion of airframe ice; and (5) both planes "were in icing conditions for only a short period of time before control was lost and fatal crashes occurred," id. at 25.
 
 
 22
 Beech contends that testimony about the St. Anne accident properly was excluded because the accident occurred one year after the Steil crash and because it did not occur under sufficiently similar circumstances to be relevant. Regarding the second point, Beech points to several dissimilarities between the two accidents which justify the exclusion of the St. Anne testimony. These include: (1) the St. Anne pilot broke his altitude clearance of 13,000 feet and was detected at 13,800 feet, while the Steil plane crashed before reaching its assigned altitude of 11,000 feet; (2) the St. Anne pilot had a record of pilot problems; (3) the St. Anne pilot indicated that he was having a problem with his autopilot; (4) it cannot be determined how long before the crash the St. Anne plane began to pick up ice, whereas Mr. Steil was "beginning to pick up a little [l]ight rime," R.175 at 96, only three minutes before the impact; and (5) the St. Anne plane crashed in a near-vertical descent, with a 70-80 degree nose-down attitude, whereas the Steil plane appeared flyable when it came out of the clouds, "as evidenced by its impact with the trees at only a three degree nose down attitude," Appellee's Br. at 21.
 
 
 23
 The district court excluded testimony about the St. Anne accident after balancing the probative value of the testimony against its prejudicial effect pursuant to Federal Rule of Evidence 403.[6] In ruling from the bench, the court stated that:
 
 
 24
 [T]he Court feels that there are so many dissimilar facts and so few established facts to indicate similarity that the probative value of this comparison is outweighed by the fact that it would create an unfair prejudice to the defendant and could in the Court's mind, judging from the arguments here[,] add to the confusion of this hearing with the state of the record as it is.
 
 R.181 at 139-40.[7]
 
 25
 A trial court's balancing under Rule 403 is governed by the abuse of discretion standard and will be accorded "great deference" on appeal. United States v. Garner, 837 F.2d 1404, 1416 (7th Cir.1987) (quoting Davis v. Lane, 814 F.2d 397, 399 (7th Cir.1987) (quoting West v. Love, 776 F.2d 170, 174 (7th Cir.1985))). We have reviewed the record carefully. It reveals that the district court fully considered the arguments for and against the admissibility of the St. Anne testimony. "When the district court has given such careful attention to a balancing of prejudice and probative value, we are particularly mindful of our duty not to reverse absent a clear abuse of discretion." Id.
 
 
 26
 Nevertheless, the plaintiffs argue that, in most airplane crash cases, direct evidence of causation is destroyed in the accident. As a result, there is a special need for circumstantial evidence of the type offered in this case. Cf. Riordan v. Kempiners, 831 F.2d 690, 698 (7th Cir.1987) ("A plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance or excessive mistrust of juries."). Because this tension exists between the discretion traditionally accorded to trial courts in this area and the need for circumstantial evidence of causation, we shall discuss in more detail the basis for the district court's ruling.
 
 2. Analysis
 
 27
 a. Similar Accidents Argument
 
 
 28
 Evidence of other accidents in products liability cases is relevant to show notice to the defendant of the danger, to show existence of the danger, and to show the cause of the accident. Gumbs v. International Harvester, Inc., 718 F.2d 88, 97 (3d Cir.1983) (citing L. Frumer & M. Friedman, 1 Products Liability Sec. 1201 (1983) and McCormick, Handbook of the Law of Evidence Sec. 200 (2d ed. 1972)); see also Borden, Inc. v. Florida East Coast Ry. Co., 772 F.2d 750, 754 (11th Cir.1985); Ramos v. Liberty Mut. Ins. Co., 615 F.2d 334, 339 (5th Cir.), clarified, 620 F.2d 464 (5th Cir.1980), cert. denied, 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed.2d 840 (1981); Elsworth v. Beech Aircraft Corp., 37 Cal.3d 540, 208 Cal.Rptr. 874, 691 P.2d 630, 639 (1984) (en banc), cert. denied, 471 U.S. 1110, 105 S.Ct. 2345, 85 L.Ed.2d 861 (1985); see generally E. Cleary, McCormick On Evidence Sec. 200 (3d ed. 1984) (hereinafter McCormick ); 2 J. Weinstein & M. Berger, Weinstein's Evidence p 401 (1987) (hereinafter Weinstein). However, before such evidence will be admitted, the proponent must show that the other accidents occurred under substantially similar circumstances. Borden, 772 F.2d at 755 (" 'Whether a reasonable inference may be drawn as to the harmful tendency or capacity of [a product] from prior failures depends upon whether the conditions operating to produce the prior failures were substantially similar to the occurrence in question.' " (quoting Jones & Laughlin Steel Corp. v. Matherne, 348 F.2d 394, 400 (5th Cir.1965)) (emphasis added)).[8]
 
 
 29
 The foundational requirement that the proponent of similar accidents evidence must establish substantial similarity before the evidence will be admitted is especially important in cases such as this where the evidence is proffered to show the existence of a dangerous condition or causation.[9] The rationale for this rule is simple. In such cases, the jury is invited to infer from the presence of other accidents (1) that a dangerous condition existed (2) which caused the accident. McCormick, supra, Sec. 200 at 588 n. 11. As the circumstances and conditions of the other accidents become less similar to the accident under consideration, the probative force of such evidence decreases. At the same time, the danger that the evidence will be unfairly prejudicial remains. "[T]he jury might infer from evidence of the prior accident alone that ultra-hazardous conditions existed ... and were the cause of the later accident without those issues ever having been proved." Gardner v. Southern Ry. Sys., 675 F.2d 949, 952 (7th Cir.1982) (per curiam). In addition, the costs--in terms of time, distraction and, possibly, prejudice--resulting from such evidence also may weigh against admissibility. Accordingly, "[e]ven when substantial identity of the circumstances is proven, the admissibility of such evidence lies within the discretion of the trial judge who must weigh the dangers of unfairness, confusion, and undue expenditure of time in the trial of collateral issues against the factors favoring admissibility." McKinnon v. Skil Corp., 638 F.2d 270, 277 (1st Cir.1981).
 
 
 30
 Given these guiding principles, we cannot disturb the district court's conclusion that the plaintiffs have failed to demonstrate sufficient similarity between the St. Anne accident and the Steil crash to justify admission of the disputed testimony. As the district court noted, there are too few established facts about the St. Anne accident from which a comparison between the two accidents can be made. Our primary concern is that the plaintiffs have not presented any evidence that the alleged dangerous condition--a frozen elevator--was in any way involved in the St. Anne accident. In contrast, the cases cited by the plaintiffs in support of their position all involve circumstances where the proponent of the evidence was able to establish certain facts about the other accidents that permitted a useful comparison to be made. See Rimer v. Rockwell Int'l Corp., 641 F.2d 450 (6th Cir.1981) (alleged dangerous condition was a defective fuel cap; other airplane accidents were caused by fuel siphoning in identical planes with similar fuel systems); Ramos, 615 F.2d 334 (alleged dangerous condition was defective pins connecting upper third of mast to middle third; other accidents were caused by failure of pins leading to collapse of mast); Elsworth, 208 Cal.Rptr. 874, 691 P.2d 630 (alleged dangerous condition was tendency of aircraft to spin unduly in a single engine stall; other airplane accidents all involved the stall and spin of the aircraft).
 
 
 31
 Here, the plaintiffs have shown only that both the St. Anne plane and the Steil plane were in some sort of icing environment and that both crashed. There was no evidence that an elevator failure occurred in the St. Anne crash that would provide a link between that accident and the plaintiffs' theory of their case. See Gumbs, 718 F.2d at 97 (plaintiff failed to establish logical relationship between the proffered evidence and his case because, inter alia, the cause of the other accidents was different from the plaintiff's theory as to the cause of the accident at issue).
 
 
 32
 Moreover, if the district court had permitted this evidence, the defendant would have had to defend, as a practical matter, not only against the present suit, but also against the St. Anne crash. The jury would be confronted with additional technical evidence on a collateral issue that would have unnecessarily prolonged the trial and created a risk of confusion of the issues. "[W]e cannot ignore ... that when a claim is made for the showing of [similar] accidents, an element of a trial on collateral issues, sometimes termed a trial within a trial, is introduced with the real possibility of undue delay." Kelsay v. Consolidated Rail Corp., 749 F.2d 437, 443 (7th Cir.1984); see also In re Agent Orange Prods. Liab. Litig., 611 F.Supp. 1223, 1256 (E.D.N.Y.1985) ("The waste-of-time ground for exclusion [under Rule 403] is particularly persuasive when detailed rebuttal testimony would be necessary to establish that the proffered evidence lacks probative worth."). The district court had good reasons to exclude the testimony and we do not find any abuse of discretion in its ruling.
 
 
 33
 b. Expert Opinion Argument
 
 
 34
 The plaintiffs also argue that testimony about the St. Anne accident should have been admitted under Federal Rule of Evidence 703[10] because their expert witness relied upon this evidence in forming his opinion as to the cause of the Steil crash.[11] They allege that the district court's exclusion of the evidence erroneously limited the scope of this expert testimony. In doing so, they contend, the district court relied upon an incorrect legal standard for the admission of expert testimony under Rule 703 which must be reversed.
 
 
 35
 We see no merit in the plaintiffs' contention. Rule 703 departs from the common law in permitting an expert to form an opinion based on facts or data that are not admissible in evidence. The rule is qualified by the requirement that the facts or data be of the type reasonably relied upon by experts in that particular field of expertise. See generally S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 668 (4th ed. 1986) (hereinafter Federal Rules Manual ). However, the rule does not indicate whether the expert may reveal to the jury the factual basis of his opinion if those facts are not independently admissible into evidence.[12]
 
 
 36
 In Baumholser v. Amax Coal Co., 630 F.2d 550, 552-53 (7th Cir.1980), this court held that a study conducted by the plaintiffs' expert witness, which was hearsay and not independently admissible under any recognized exception, was nevertheless admissible as the basis of opinion testimony under Rule 703. Other courts have agreed with this view. See Lewis v. Rego Co., 757 F.2d 66, 73-74 (3d Cir.1985); Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1262-63 (9th Cir.1984); In re Aircrash In Bali, Indonesia On April 22, 1974, 684 F.2d 1301, 1314-15 (9th Cir.1982). However, to say that Rule 703 permits an expert to base his opinion upon materials that would otherwise be inadmissible does not necessarily mean that materials independently excluded by the court by reason of another rule of evidence will automatically be admitted under Rule 703. See Barrel of Fun, Inc. v. State Farm Fire & Casualty Co., 739 F.2d 1028, 1033 (5th Cir.1984) (Rule 703 does not guarantee the admissibility of all expert testimony that meets its criteria if such testimony runs afoul of other evidentiary requirements). As this court has already held, "expert testimony is subject to Rule 403's general bar on the admission of unduly prejudicial evidence." Kladis v. Brezek, 823 F.2d 1014, 1019 (7th Cir.1987); accord United States v. Hillsberg, 812 F.2d 328, 332 (7th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987); United States v. Lundy, 809 F.2d 392, 394 (7th Cir.1987); Barrel of Fun, 739 F.2d at 1033; In re Aircrash In Bali, 684 F.2d at 1315.[13] This approach is preferable because it leaves the trial court with greater flexibility in deciding when to permit an expert witness to testify about otherwise inadmissible facts. This approach also is consistent with Baumholser which "endorsed the trial judge's use of a flexible-liberal approach in dealing with an expert opinion that had relied on inadmissible hearsay." 3 Weinstein, supra, p 703 at 703-19. The Baumholser court noted that, if the expert's opinion is allowed, " 'the court may, in its discretion, allow the expert to reveal to the jury' " the information gained from the expert's pretrial studies and investigations pursued in preparation for expressing an opinion. 630 F.2d at 553 (quoting Standard Oil Co. v. Moore, 251 F.2d 188, 222 (9th Cir.1957), cert. denied, 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958)) (emphasis supplied). "In making its assessment in Baumholser, the court was, in effect, employing a Rule 403 analysis of balancing probative value against the dangers of prejudice, confusion and waste of time." 3 Weinstein, supra, at 703-21.
 
 
 37
 The plaintiffs argue that United States v. Kuecker, 740 F.2d 496 (7th Cir.1984), and Campbell v. Greer, 831 F.2d 700 (7th Cir.1987), stand for the proposition that Rule 703 supersedes Rule 403. However, the Kuecker court held only that the specific language of Federal Rule of Evidence 609(a)(2) controls over the general language of Rule 403. 740 F.2d at 502. The Campbell court extended this holding to cover the first part of Rule 609(a) as well. 831 F.2d at 705-06. Rule 609 deals with the use of a prior criminal conviction as impeachment evidence. Both Kuecker and Campbell are premised on the proposition that "Rule 403 is inapplicable where another rule has dealt exhaustively with the admissibility of a particular class of evidence." Campbell, 831 F.2d at 706. This proposition is not inconsistent with our holding in this case. "[W]here, as in Rule 609(a), Congress has taken pains to specify the conditions for both the admission and the exclusion of a specific class of evidence (convictions), district courts may not use Rule 403 to set that specification at naught." Id. On the other hand, where, as in Rule 703, Congress has merely provided that a certain class of evidence should not be excluded for a particular reason, the evidence may still be excluded on other grounds. See id. ("Evidence may be inadmissible for more than one reason."); Rozier v. Ford Motor Co., 573 F.2d 1332, 1347 (5th Cir.1978) (evidence not barred by the hearsay rule may still be barred by Rule 403). Therefore, we hold that the district court did not err as a matter of law in excluding under Rule 403 the expert testimony regarding the St. Anne accident.[14]
 
 B. The Mock Incident
 1. Pilot's Report
 
 38
 On February 1, 1983, United States Forestry Service pilot Robert C. Mock reported that, while flying a Beech Baron 58P airplane in icing conditions, his elevator control jammed. He explained that: "The control column appeared to be locked or frozen because when I pulled back on the yoke to level it off it kept descending and I had to physically snap the elevator." R. 182 at 197. Mr. Mock was able to free the elevator by applying approximately ten pounds of pressure to the control. He then continued to a safe landing.
 
 
 39
 Although the district court originally excluded testimony about the Mock incident under Rule 403, see supra note 7, the court ultimately permitted the plaintiffs to read into evidence portions of Mr. Mock's deposition.[15] Despite the fact that the district court permitted the Mock testimony, the plaintiffs cite as reversible error the district court's redaction of the incident report filed by Mr. Mock after the incident took place. See R. 182 at 155-66; R. 183 at 247-49. The disputed sentence that was redacted from the report read: "There was considerable ice packed in the gap between the elevator and the horizontal stabilizer by the horn." Plaintiffs' Ex. 35. The court redacted this statement because Mr. Mock testified at his deposition that he was not the person who wrote it. Mr. Mock testified that he did not know who wrote this statement at the end of his own handwritten report, see R. 188 (Attachment A), but that he assumed the instructor pilot who had accompanied him on the flight had added it. He testified that, "ordinarily, both pilots in the aircraft will fill out the incident report. That's the only reason I'm speculating that he probably added that, but it's pure speculation on my part 'cause I feel this is the only part that I can confirm 'cause that's the only part that I filled out." Deposition of Robert Mock at 33. The court ruled that "it would unduly prejudice this jury in view of the fact this witness is not the author of that statement, [and] could not have made the observations necessary to accurately set that information forth in this report." R. 182 at 166.
 
 
 40
 The plaintiffs argue that the entire report was admissible under Federal Rule of Evidence 803(8) because it satisfies the requirements of the public documents exception to the hearsay rule.[16] They contend that the court's redaction of this statement from the report was prejudicial because "[t]he jury was led to believe ... that the whole incident presented no safety concern. What the jury did not hear is that the elevator gap had in fact become packed with ice...." Appellants' Reply Br. at 9 (emphasis in original).
 
 
 41
 The plaintiffs are correct that the excluded statement was relevant to their case. As the district court noted, the "sentence ... is highly probative if it were, in fact, true." R. 182 at 166. Furthermore, the statement should not have been excluded because of "unfair prejudice" within the meaning of Rule 403; although damaging to the defendant's case, it is not prejudicial in the sense that the jury might have used the evidence against the defendant in an unfair or inappropriate manner. See Kelsay v. Consolidated Rail Corp., 749 F.2d 437, 443 (7th Cir.1984) (unfair prejudice as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party). Nevertheless, the district court did not abuse its discretion in redacting the document. The real concern with this hearsay statement is, obviously, its reliability. Rule 803(8) provides an exception to the hearsay rule for public records and reports. The theory behind the exception is that government reports are probably reliable. See 4 Weinstein, supra, p 803(8) at 803-233; Federal Rules Manual, supra, at 833. However, as Judge Weinstein notes:
 
 
 42
 [T]here may be instances when questions raised about the manner in which the record was made or kept, or when it was made in relation to the events recorded, which must be satisfactorily explained by a custodian or other qualified witness, if the judge is not to exclude for lack of trustworthiness pursuant to the last clause of Rule 803(8).
 
 
 43
 4 Weinstein, supra, p 803(8) at 803-234 to -235; see also Federal Rules Manual, supra, at 833 (raising question whether last clause of Rule 803(8) relating to document's trustworthiness applies to all three sections of the Rule or only to part (C) and concluding that the former reading is preferable). It was within the district court's discretion to decide that the unidentified statement was not trustworthy and therefore should be excluded. As the trial judge noted, the plaintiffs were unable to establish that the official who reported the disputed statement had firsthand knowledge of the observation. See Fed.R.Evid. 602 advisory committee's note (personal knowledge requirement does not govern situation where a witness testifies to a hearsay statement if he has personal knowledge of the making of the statement). As Judge Weinstein has observed:
 
 
 44
 Rule 803(8) is silent about a requirement of personal knowledge, although the introductory notes to Rule 803 state that "neither this rule nor Rule 804 dispense with the requirement of first-hand knowledge." In the case of Rule 803(8) this requirement must be interpreted flexibly, bearing in mind that the primary object of the hearsay rule is to bar untrustworthy evidence. See p 800. In the case of records of activities performed or facts observed (Rule 803(8)(A), (B)), the personal knowledge requirement should be enforced because the official
 
 
 45
 cannot fulfil his duty to do or supervise the transaction except so far as it is done by or before him, and thus the correlative duty to record, certify or return involves necessarily a personal knowledge of the transaction.
 
 
 46
 4 Weinstein, supra, p 803(8) at 803-240 (quoting 5 Wigmore, Evidence Sec. 1635 at 526 (3d ed. 1940)) (footnote omitted); see also Walker v. Fairchild Indus., 554 F.Supp. 650, 652 (D.Nev.1982) (discussing personal knowledge requirement under Rule 803(8)(C)). Since Mr. Mock disavows any personal knowledge of the contested statement and the actual author of the statement is unknown, it was within the district court's discretion to exclude the unredacted report. See United States v. Perlmuter, 693 F.2d 1290, 1293 (9th Cir.1982); see also Blim v. Western Elec. Co., 731 F.2d 1473, 1476-77 (10th Cir.) (per curiam), cert. denied, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984).
 
 2. United States Forestry Service Bulletin
 
 47
 The plaintiffs also allege error in the district court's exclusion of a government bulletin issued by the United States Forestry Service on October 5, 1979. The bulletin is signed by Gary E. Cargill, Director of Aviation and Fire Management, and is addressed to Regional Foresters. The plaintiffs offered the forestry bulletin for the warning it contains concerning flying a Baron 58 aircraft in icing conditions:
 
 
 48
 We recently participated in an investigation being conducted by National Transportation Safety Board (NTSB) and aviation safety specialists involving Beechcraft Model 58 Baron aircraft.
 
 
 49
 As a precaution pending action by NTSB, FAA or the Beechcraft Corporation:
 
 
 50
 1. Do not fly into known or forecast icing with Beechcraft 58P or 58TC aircraft. If icing is encountered in flight, deactivate the autopilot, make every effort to get out of the icing conditions, and exercise the elevators frequently to avoid jamming.
 
 
 51
 Plaintiffs' Ex. 36.
 
 
 52
 The plaintiffs offered this bulletin on the issue of Beech's duty to warn. The report is relevant on this issue, they contend, because Mr. Mock testified that he had read the bulletin and had incorporated into his flying habits the bulletin's warning about exercising the elevator frequently in icing conditions. Deposition of Robert Mock at 38-43. The plaintiffs assert that Mr. Mock was able to identify the problem with his elevator and avoid disaster because of this warning. They argue that the bulletin therefore is "relevant to the issues of Beech's duty to warn and to show the feasibility of warning pilots and the favorable effects such warnings can have." R. 157 at 5 (Memorandum of Law Supporting Admission of Government Reports).
 
 
 53
 A manufacturer may be held liable in negligence if he fails to warn users of his product of its danger if the manufacturer has actual or constructive knowledge of that danger. See generally L. Frumer & M. Friedman, 1A Products Liability Sec. 2.22 (1987); Restatement (Second) of Torts Sec. 388 (1965); Annotation, Manufacturer's or Seller's Duty to Give Warning Regarding Product As Affecting His Liability for Product-Caused Injury, 76 A.L.R.2d 9 (1961). The jury in this case received an instruction on this theory of liability. See R. 176 at 697. It would seem then that the bulletin was relevant to an issue in the case. Nevertheless, not all relevant evidence is admissible. In this case, the district court excluded references to the forestry bulletin because the plaintiffs were unable to provide any information about the author. In explaining its ruling, the court indicated that it was concerned that the plaintiffs knew "nothing about [the author's] qualifications, source of his knowledge, the accuracy of that information, [and] what prompted the letter." R. 182 at 172. The plaintiffs argued in response that "the reason [the bulletin] is offered is not necessarily for the thorough research job that [the author] did, it is what happened to Mr. Mock, incorporated this morning [sic] [warning] into his flying habits." Id. at 173. The plaintiffs repeat this argument in this appeal. However, their argument ignores the fact that, although the district court excluded the forestry service bulletin, the court did permit Mr. Mock's testimony that he knew to exercise the elevator because he had received a warning. See R. 182 at 200-01. In other words, the district court only excluded reference to the bulletin itself; the fact that Mr. Mock had been warned of the danger of flying in icing conditions was before the jury. Indeed, counsel for the plaintiffs argued this point extensively during closing arguments. See R. 176 at 632-33.
 
 
 54
 Nevertheless, the plaintiffs still contend that the bulletin itself should have been admitted. In their own words, the plaintiffs offered the document to demonstrate "Beech's duty to warn and to show the feasibility of warning pilots[17] and the favorable effects such warnings can have." R. 157 at 5. This is but another way of saying that the document was offered to prove that Beech's failure to warn caused the Steil crash, or, in other words, that the particular danger as to which there was a failure to warn was the cause of the injury. See Annotation, supra, 76 A.L.R.2d at 66. The plaintiffs argued in the district court that the bulletin was admissible under Federal Rule of Evidence 803(8) even though it was being offered for a hearsay purpose. R. 157. However, as we have noted earlier in this opinion with regard to the pilot's report, a trial court has the discretionary authority under Rule 803(8) to exclude a public document for lack of trustworthiness. We therefore see no reversible error in the district court's ruling that it would not admit the bulletin because the court questioned its trustworthiness.
 
 
 55
 C. Other Evidentiary Rulings of the District Court
 
 
 56
 1. Bureau of Flight Standards Release No. 434
 
 
 57
 The plaintiffs challenge the district court's exclusion of a government bulletin issued by the FAA in 1959 entitled Bureau of Flight Standards Release No. 434 (Release No. 434). The purpose of Release No. 434 was to advise "general operators [of] the basic hazards of icing conditions in flight...." Plaintiffs' Ex. 43 at 1. The release provides that the accumulation of ice can "jam flight control surfaces if the buildup occurs near hinge points or between fixed and moveable flight surfaces." Id. at 2. Beech opposed the admission of this release because it had been cancelled in 1966 pursuant to a document entitled Cancellation of Flight Standards Service Releases. See Defendant's Ex. 661. The district court excluded Release No. 434, ruling that it was not "the type of responsible, reliable document that can and should be considered by the jury" because it had been cancelled "for whatever reason" almost ten years preceding the manufacture of the plane at issue in this case. R. 184 at 323-24.
 
 
 58
 The plaintiffs argue that Release No. 434 was admissible, like the pilot's report, under Federal Rule of Evidence 803(8) as a public record. Furthermore, they contend that the reliability of this document was not undermined by the fact that it had been technically cancelled by the government in 1966. This is because, they assert, the cancellation was made pursuant to a general cancellation order resulting from a change in the method of conveying technical information by the FAA and having nothing to do with the substance of the release. Appellants' Reply Br. at 11. Moreover, they point out that NTSB investigators have continued to rely upon this release, as evidenced by a citation to it in the St. Anne accident report. Finally, they claim that Release No. 434 should have been admitted in any case because their expert, Professor Kennedy, relied upon it in formulating his opinions regarding the cause of the Steil crash.
 
 
 59
 The plaintiffs' contention that Release No. 434 should have been admitted as a basis for their expert's opinion need not detain us very long. We have already held that evidence admissible under Rule 703 as expert opinion testimony may nevertheless be excluded under another rule. Thus, it was within the district court's discretion to exclude the evidence as unreliable. With respect to the plaintiffs' Rule 803(8) argument, we believe that the district court had adequate reasons because of the document's cancellation to doubt its trustworthiness. See Haynes v. American Motors Corp., 691 F.2d 1268, 1273 (8th Cir.1982) (trial court did not err in refusing to admit into evidence Federal Standard 515/25, a federal regulation relating to requirements for utility vehicles purchased by federal government, where standard was rescinded before date of accident). Furthermore, the court provided the plaintiffs with the opportunity to submit proof showing that the cancellation of Release No. 434 did not call into question the reliability of that document. The court said: "Now there may be a way of explaining this ... by calling Mr. Walker or whoever his successor is as director of the flight standard series. With the absence of some authoritative explanation, the Court is going to sustain the objection to [Exhibit] 43 in view of the information viewed in [Exhibit] 661." R. 184 at 324. The plaintiffs never followed up on the court's suggestion to submit proof on the question. The district court did not abuse its discretion in refusing to accept the plaintiffs' conclusory assertions that Release No. 434 was still considered authoritative by the FAA.
 
 2. The Beech Document
 
 60
 The plaintiffs next object that the district court did not admit into evidence Plaintiffs' Ex. 47 (hereinafter the Beech document). The Beech document consists of a two-page letter written to the NTSB by a vice president of Beech. Attached to the letter is a chart compiling certain facets of eight accidents that the NTSB identified as involving "similar conditions and circumstances" as those surrounding the St. Anne accident. Plaintiffs' Ex. 47 at 1. The plaintiffs offered the Beech document to impeach the testimony of one of the defendant's witnesses, David Reida, Manager of Systems Design for the Production and Engineering Department at Beech Aircraft. Mr. Reida testified that he was aware of only one other incident--the Mock incident--in which airframe icing was implicated in a situation involving a Beech Baron 58 aircraft. The Beech document indicated that a copy of the letter had been sent to Mr. Reida. Therefore, the plaintiffs proffered the document to show that Mr. Reida in fact had notice of at least eight other reported accidents in which the Baron's ability to perform in icing conditions was questioned.
 
 
 61
 The plaintiffs did not attempt to offer the Beech document while Mr. Reida was testifying.[18] Instead, they attempted to do so after Mr. Reida had already been excused as a witness and the defense had rested its case. Counsel for the plaintiffs explained that he did not have the document with him at the time but that he had located it during a noon recess and promptly offered it when the trial resumed. However, by that time, Mr. Reida had left town. The district court thus excluded the Beech document because Mr. Reida was no longer available to testify about it and the plaintiffs had not objected to excusing him as a witness. R. 176 at 565-71.[19]
 
 
 62
 The plaintiffs argue that they should have been allowed to impeach the testimony of Mr. Reida with this document. "[S]imple fairness dictates that Exhibit 47, showing that Reida was likely to be aware of the eight other Baron accidents, should have been presented to the jury for their deliberation." Appellants' Br. at 34. They assert that the district court's ruling is erroneous because a witness does not have a right to confront impeaching material during cross-examination.
 
 
 63
 A trial court has broad discretion in controlling the mode and order of presenting evidence. See Fed.R.Evid. 611. In this case, the court considered it unfair to allow the impeachment when the witness was not given a chance to explain. Cf. Fed.R.Evid. 613(b) (extrinsic evidence of prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same). It was within the district court's discretion to limit impeachment that it believed was repetitive, unhelpful, or unduly prejudicial. See Fed.R.Evid. 403.[20]
 
 
 64
 The plaintiffs' real argument seems to be that the Beech document was important evidence on the issue of Beech's duty to warn. "What Reida--and therefore Beech--knew about other accidents involving the Baron 58-series wherein airframe icing was a known or possible factor was a critical element of plaintiffs' warning theory." Appellants' Br. at 34. They assert that, because the Beech document was offered to prove notice or knowledge of similar accidents affecting Beech's duty to warn, the substantial similarity requirement for similar accidents evidence should be significantly relaxed. See Appellants' Br. at 33 and supra note 9. The plaintiffs' argument fails because the Beech document is dated October 17, 1980, almost three years after the Steil crash. It therefore cannot be relevant to the issue of Beech's knowledge of similar accidents as affecting its duty to warn in this case. See supra note 8. Its significance was merely to contradict Mr. Reida on a collateral issue. We also note that the plaintiffs' argument in the district court for admitting this document was limited to impeachment evidence. Counsel for the plaintiffs stated: "This document directly impeaches [Mr. Reida's] testimony, and it was not in court at the time he made the statement.... There is no reason it shouldn't be received into evidence. Non[e] whatsoever. I am not arguming [sic] substantial similarity here, I am arguing strictly impeachment." R. 176 at 570 (emphasis supplied). The district court did not abuse its discretion in refusing to permit this impeachment after the witness was no longer available to testify.
 
 3. Videotape Evidence
 
 65
 The plaintiffs' final contention is that the district court abused its discretion in admitting into evidence a videotape offered by Beech in support of its case. This videotape purported to demonstrate the manner in which ice accumulates and is removed by deicing equipment on the Beech Baron aircraft. In 1980 and 1981, Beech conducted a series of natural icing flight tests in a Baron 58TC for purposes unrelated to this litigation.[21] Approximately 73 hours of flight time went into these tests, of which approximately 40 hours were taped. The videotape offered at trial was a selectively edited compilation of the films taken during the test flights. It lasted 51 minutes and was shown in conjunction with the testimony of the pilot who flew the test airplane, Ralph M. Francis.
 
 
 66
 The plaintiffs argue that the videotape was completely irrelevant because it did not show the area of the alleged design defect, namely the cove gap. Moreover, they submit that, even if the videotape was relevant, it should have been excluded under Federal Rule of Evidence 403 because it was highly prejudicial. It was prejudicial, they allege, because it showed large accumulations of ice on the airframe and in other areas having no connection to the location of the alleged design defect. Furthermore, the plaintiffs point out, the testing was done by an expert test pilot, rather than by a consumer pilot, and the test pilot repeatedly exercised the controls during the flight to prevent ice accumulation in the cove gap. In sum, the plaintiffs assert, "the jury was misled into believing that (a) ice does not accumulate in the cove gap, and (b) the Baron plane must certainly be safe if it can be flown with such enormous accumulations of airframe ice." Appellants' Br. at 41.
 
 
 67
 Beech responds that the videotape was relevant to demonstrate how the Baron aircraft, equipped as was the Steil airplane, flies in icing conditions. Furthermore, Beech asserts, the videotape also showed how the airplane reacted in a stall situation, which was precisely the situation testified to by Professor Kennedy during the plaintiffs' case-in-chief. Beech submits that the plaintiffs' objections to the film should be rejected for a number of reasons, including: (1) the plaintiffs offered no objection to any specific segment of the videotape at trial; (2) the plaintiffs did not ask the court to make any type of limiting ruling with respect to the videotape or to exclude portions of it from consideration of the jury; (3) the plaintiffs had access to the flight test films for a number of years prior to trial and made no effort to move for the admission of any other portion of the full videotapes; (4) the plaintiffs' expert witness, Professor Kennedy, offered no criticism of the videotape; and (5) the plaintiffs had broad and extensive cross-examination opportunities with the test pilot and had full opportunity to pursue any of the alleged discrepancies between the test flight and the conditions under which the Steil plane crashed.
 
 
 68
 Whether to admit demonstrative evidence of this sort is a decision committed to the broad discretion of the trial court. Hale v. Firestone Tire & Rubber Co., 756 F.2d 1322, 1333 (8th Cir.1985); Sedlack v. General Motors Corp., 253 F.2d 116, 117 (7th Cir.1958). In this case, the district court allowed the evidence under the following reasoning: "[T]he Court ... will permit the video film to be shown, and will permit the audio portion to be played to the jury, as long as its [sic] offered for the purpose of illustrating how the plane functioned under icing conditions." R. 175 at 87.
 
 
 69
 As a general rule, the proponent of experiments must establish a foundation for the evidence by demonstrating that the experiments were conducted under conditions that were similar to those that existed at the time of the accident. Hale, 756 F.2d at 1333; Jackson v. Fletcher, 647 F.2d 1020, 1027 (10th Cir.1981); Brandt v. French, 638 F.2d 209, 212 (10th Cir.1981); Maskrey v. Volkswagenwerk Aktiengesellschaft, 125 Wis.2d 145, 370 N.W.2d 815, 825 (Ct.App.1985). However, "[d]emonstrations of experiments used to merely illustrate the principles informing an expert opinion do not require strict adherence to the facts." Brandt, 638 F.2d at 212; see also Gladhill v. General Motors Corp., 743 F.2d 1049, 1051 (4th Cir.1984). The videotape in this case was presented to show the normal operation of the plane in icing conditions. Whether the plane could fly safely in icing conditions certainly was a disputed issue at trial.[22] Moreover, the videotape was not offered to reenact the accident, nor was there any suggestion that the experiment simulated actual events. See Gladhill, 743 F.2d at 1051 (experiment went beyond a mere demonstration of a physical principle). Therefore, we cannot say that the district court committed reversible error in determining that the film was relevant to disputed issues at trial and that an adequate foundation had been laid for its admission.
 
 
 70
 In similar fashion, we cannot disturb the district court's conclusion that the videotape was not unduly prejudicial. The plaintiffs made no showing that the controls were manipulated with any greater degree of frequency than they would be in normal flight. The fact that the pilot may have moved the plane's elevator at various points throughout the test flight to demonstrate that it was free from ice went to the weight of this evidence rather than to its admissibility. We note that, on at least one occasion, the plane had been in icing conditions for at least one hour before the pilot pulsed the controls. R. 175 at 150. The district court's decision to permit the jury to weigh the value of this evidence in light of the facts that an experienced test pilot was used in the film and the alleged design defect was not highlighted also was within its discretion.
 
 Conclusion
 
 71
 We have reviewed all of the plaintiffs' contentions on appeal. The district court fairly considered their evidentiary contentions and there was no reversible error. Accordingly, we affirm the judgment of the district court.[23]
 
 
 72
 AFFIRMED.
 
 
 
 [1]
 Rule 61 of the Federal Rules of Civil Procedure provides that:
 No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.
 Fed.R.Civ.P. 61.
 
 
 [2]
 Rime ice is a crusty, milky type of ice similar to that which forms on the inside of a refrigerator. R. 175 at 113
 
 
 [3]
 An aircraft "stalls" when its wings are unable to produce the lift necessary to sustain the plane in the air because of an inordinate angle of attack relative to the airstream. R. 175 at 110; R. 180 at 55
 
 
 [4]
 The district court denied the plaintiffs' motion for a new trial under Federal Rule of Civil Procedure 59(a). Nachtsheim v. Beech Aircraft Corp., order (E.D.Wis. Jan. 6, 1987); R. 172. The plaintiffs do not appeal the district court's denial of this motion
 
 
 [5]
 For purposes of this case, the parties agree that the model 58TC Baron is identical to the model 58P Baron involved in the Steil crash. R. 175 at 116
 
 
 [6]
 Rule 403 provides that evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403
 
 
 [7]
 At the time this issue was raised before the district court, the parties were contesting the admissibility of both the St. Anne accident and an incident that occurred near Boise, Idaho in 1983. In the Boise incident, a United States Forestry Service pilot, Robert C. Mock, reported that he experienced an elevator problem while flying a Baron 58P airplane in icing conditions. The district court originally excluded testimony by the plaintiffs' expert witness about the Mock incident under the same reasoning as its exclusion of the St. Anne testimony. See R. 181 at 141-42. The district court later permitted the plaintiffs to read into evidence portions of Mr. Mock's deposition. See infra Part B
 
 
 [8]
 The fact that the St. Anne accident occurred one year after the Steil crash does not render the evidence inadmissible. "While only earlier accidents can be relevant to the issue of notice, causation is an issue affected only by the circumstances and the equipment, and is not related to the date of the occurrence." Uitts v. General Motors Corp., 58 F.R.D. 450, 452 (E.D.Pa.1972); accord Bailey v. Kawasaki-Kisen, K.K., 455 F.2d 392, 396-97 (5th Cir.1972); Kanelos v. Kettler, 406 F.2d 951, 956 n. 30 (D.C.Cir.1968)
 
 
 [9]
 The requirement of similarity is less strict when the evidence is sought to be admitted to show notice. "For purposes of proving other accidents in order to show defendants' awareness of a dangerous condition, the rule requiring substantial similarity of those accidents to the accident at issue should be relaxed." Jackson v. Firestone Tire & Rubber Co., 788 F.2d 1070, 1083 (5th Cir.1986); see also Borden, Inc. v. Florida East Coast Ry. Co., 772 F.2d 750, 755 (11th Cir.1985); Gardner v. Southern Ry. Sys., 675 F.2d 949, 952 (7th Cir.1982); Elsworth v. Beech Aircraft Corp., 37 Cal.3d 540, 208 Cal.Rptr. 874, 691 P.2d 630, 639 (1984) (en banc) (for purposes of showing notice, previous injury need only be such as to attract the defendant's attention to the dangerous situation), cert. denied, 471 U.S. 1110, 105 S.Ct. 2345, 85 L.Ed.2d 861 (1985); E. Cleary, McCormick On Evidence Sec. 200 at 590 (3d ed. 1984); 2 J. Weinstein & M. Berger, Weinstein's Evidence p 401 at 401-66 to -67 (1987)
 
 
 [10]
 Rule 703 provides that:
 The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
 Fed.R.Evid. 703.
 
 
 [11]
 The plaintiffs attempted to introduce evidence about the St. Anne accident through the testimony of their expert witness, Professor Kennedy. On direct examination, the plaintiffs' attorney asked the following question: "What, if anything, have you done, Dr. Kennedy, to strengthen the opinion that you hold and that you've expressed here today?" R. 181 at 108. The defendant objected when Professor Kennedy indicated in his response to this question that he had looked at other accidents involving the same or similar aircraft. After a lengthy discussion outside the presence of the jury, during which the plaintiffs made an offer of proof, the district court sustained the defendant's objection and disallowed the evidence
 
 
 [12]
 See American Bar Association, Emerging Problems Under the Federal Rules of Evidence 209 (1983) ("Once an expert gives an opinion based upon inadmissible hearsay, the question whether the jury should be provided with the otherwise inadmissible information often arises. Rule 703 does not directly address this problem, nor does Rule 705.")
 
 
 [13]
 See also Fed.R.Evid. 704 advisory committee's note ("Under Rules 701 and 702, opinions must be helpful to the trier of facts, and Rule 403 provides for exclusion of evidence which wastes time."); S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 671 (4th ed. 1986) ("best reading of Rule 703" permits expert to state facts he relied upon in forming his opinion with caveat that "Rule 403 could be used to keep such evidence out where its admission might be unfair to an opposing party")
 
 
 [14]
 Because we conclude that the district court did not abuse its discretion in excluding testimony concerning the St. Anne accident, there is no reason to consider whether the plaintiffs should have been allowed to introduce into evidence Plaintiffs' Exhibit 29, the NTSB report of the St. Anne accident
 
 
 [15]
 In overruling the defendant's objections to this evidence, the district court stated that:
 The concern to the Court is on form but the unbalance on [sic] the probative value of the testimony of an experienced pilot who's flying the same plane under the same circumstances, what appears at least to be somewhat similar conditions, may have some help to this jury in determining this issue.
 R. 182 at 185.
 We note that the district court's ruling is consistent with our holding with respect to the St. Anne testimony. In the Mock incident, unlike the St. Anne accident, we know that the pilot experienced a problem with a frozen elevator. Therefore, the evidence is more probative on the issues of existence of a dangerous condition and causation because there is a link between this incident and the alleged defect in the Baron 58P plane.
 
 
 [16]
 Rule 803(8) provides an exception to the hearsay rule for:
 Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
 Fed.R.Evid. 803(8). The plaintiffs argue that the Mock report is admissible under part (B) of the Rule.
 
 
 [17]
 It was within the district court's discretion to exclude the forestry bulletin for purposes of demonstrating the feasibility of warning pilots where the plaintiffs did not show that feasibility was a contested issue in the case. See Haynes v. American Motors Corp., 691 F.2d 1268, 1273 n. 55 (8th Cir.1982). In addition, we note that the bulletin would not have been admissible to show that Beech had knowledge of the danger in time to warn Mr. Steil because it was not issued until after the Steil crash
 
 
 [18]
 The plaintiffs argue in their brief that they did attempt to impeach Mr. Reida with the Beech document while he was on the witness stand but that the district court sustained an objection to such questioning. The cross-examination referred to by the plaintiffs was as follows:
 BY MR. WAWRZYN:
 Q: Mr. Reida, you are not telling the Court and jury that you have never had any complaints about the pointed elevator horn in icing situations, are you?
 A: No, sir.
 Q: You have had quite a few, haven't you?
 MR. WHEERY: I am going to object to that point to no foundation.
 COURT: Overruled, he may answer.
 A: I am aware of one report with the pointed horn.
 Q: You are only aware of one report?
 A: Yes, sir.
 Q: You have seen the document that talks about the eight similar incidents and accidents?
 MR. WHERRY: I am going to object to this and move that this be stricken, your Honor.
 COURT: All right, I will sustain the objection as to the form of this question.
 MR. WAWRZYN
 Q: Were you here when Mr. Mott [sic] testified about the problem he had?
 A: No, sir.
 Q: Anybody ever make you aware of that problem?
 A: Yes, sir.
 Q: That was with a pointed horn, wasn't it?
 A: Yes, it was.
 MR. WAWRZYN: Nothing further.
 R. 176 at 530-31. Confronted with the trial judge's sustaining an objection as to the form of the question, counsel made no further attempt to pursue the matter. He did not inform the judge why he believed the question relevant, nor did he make any attempt to present the document. "As a consequence the argument that the court erroneously limited the cross-examination and refused extrinsic evidence is meritless." United States v. Bastone, 526 F.2d 971, 982 (7th Cir.1975), cert. denied, 425 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797 (1976).
 
 
 [19]
 The district court ruled as follows:
 If you are arguing strictly impeachment, counsel, you could have very well asked this witness if he recalled with permission from the Court and I would have granted it if it was for impeachment purposes, but when he was excused and left the courtroom, then he is deprived of any possible explanation that might be given. The fact that he was copied or his name appears on the volume being copied, doesn't necessarily mean that he saw it or read it. And that's a matter of credibility for the jury to determine after they have heard whatever explanation, if any, he might have, but to let this document in now as impeachment when he didn't have an opportunity to see it or address it seems to me to take undue advantage of that individual and his testimony. For that reason the offer is denied.
 R. 176 at 569-71.
 
 
 [20]
 The plaintiffs' citation to Rainey v. Beech Aircraft Corp., 784 F.2d 1523, 1528-30 (11th Cir.1986) and 827 F.2d 1498 (11th Cir.1987) (en banc), cert. granted, --- U.S. ----, 108 S.Ct 1073, 99 L.Ed.2d 233 (1988), is inapposite. In Rainey, the trial court permitted direct examination of the witness about portions of a letter but prohibited cross-examination about other relevant portions. This violated the "rule of completeness" found in Federal Rule of Evidence 106. See generally United States v. Sweiss, 814 F.2d 1208, 1211-13 (7th Cir.1987); United States v. Walker, 652 F.2d 708 (7th Cir.1981). The operation of Rule 106 depends upon the prior introduction of a writing and permits the adverse party to counter the introduction of such evidence with "any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed.R.Evid. 106. In this case, the defendant did not introduce portions of the Beech document, nor did it question Mr. Reida about it. See Rainey, 784 F.2d at 1529 n. 11
 
 
 [21]
 See supra note 5
 
 
 [22]
 The plaintiffs' expert witness, Earle Binckley, even testified that it certainly would be desirable to conduct natural icing flight tests with a Baron 58P before the trial. R. 185 at 468
 
 
 [23]
 The plaintiffs also argue that the district court erred in refusing to give a punitive damages instruction to the jury. Because we affirm the judgment entered against the plaintiffs on the liability question, any error relating to punitive damages was harmless. Fed.R.Civ.P. 61; see Green v. American Airlines, Inc., 804 F.2d 453, 456 (8th Cir.1986)