MICHAEL R. SENASE *et al.*, Plaintiffs-Appellants, *v.* TIMOTHY JOHNS, Defendant-Appellee.

Second District Nos. 79-597, 79-707 cons.

Opinion filed May 6, 1981.—Rehearing denied June 11, 1981.

J. Richard Stanton and John D. Moss, of Parrillo, Bresler, Weis & Moss, both of Chicago (Leonard M. Rina, of counsel), for appellants.

Robert E. Dyer, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff, Michael Senase, was the driver and the plaintiff, Thomas McDonough, his passenger, when their motorcycle was struck by a van owned by the defendant, Timothy Johns, which rolled onto the street from a private driveway, injuring both plaintiffs. The accident happened on May 15, 1977, at approximately 2 a.m. Each filed suit against Johns based on both specific acts of negligence and *res ipsa loquitur.* The separate claims were consolidated for trial, in which the jury found in favor of the defendant. The plaintiffs appeal, contending that the court erred in refusing to direct a verdict in their favor, that the verdict, in any event, is against the manifest weight of the evidence, and, alternatively, that various trial errors denied them a fair trial.

Senase essentially testified that he was traveling at 20-25 miles per hour behind another motorcycle when out of the corner of his eye he saw something move. He testified first that he did not have time to apply his brakes and on further questioning that he applied them when 15 feet from the van. He was impeached by his deposition testimony that he was unable to do anything. He said that he had no time to take other evasive action and recalled nothing after the collision. He further said that he saw no lights on the object. McDonough also testified that the motorcycles were going 20-25 miles per hour and following within 200 feet of another cycle. He said there were no street lights, that both cycles had their lights

on, and that he saw the van moving down the driveway when he was about 50 feet away. He said he saw no light in the van; that the motorcycle slowed down prior to the crash and moved to the right; and it was 5 feet to the right of the center line when it was hit, ending up under the rear of the van. He heard no motor running except those of the cycles, and heard no car door shut until the police arrived.

McDonough investigated the driveway and testified that it was 36 feet from the garage to the sidewalk in two pieces, nearly level at the garage for 18 feet and then sloped down at about 15-20 degrees for 18 feet with a gap between the two pieces.

A pedestrian saw the two cycles go by, at reasonable speed, 200 to 300 feet apart. He said he heard no other motors. He heard the crash and looked up. At that time he was about 100-150 feet from the accident. He said the van was always in sight but that he saw no one inside or exiting from it and noticed no lights in the van.

A passenger on the first motorcycle, which was not involved in the accident, testified that there were no street lights and that both motorcycles had their headlights on and were traveling 20-25 miles per hour. She said that she and her driver heard a noise and returned in 8 to 10 seconds to the scene of the accident. She did not hear a van engine start, saw no one around the van other than the victims at this time. She testified she did not go near the van door and did not notice a light in the van. The driver of the motorcycle on which she was riding also testified to similar circumstances. He said that after turning back to the scene he went for aid at a nearby house, returned to the van and opened the door. He noted that the door was on half-latch. The dome light was on after he opened the door but he was not sure if it had been on before; the keys were in the ignition and the doors were unlocked. He testified that he said to the defendant words to the effect that the guy got away and that defendant responded the van must have rolled down the driveway.

Defendant testified that he was the owner of the van, which had well over 100,000 miles on it at the time. He did all the maintenance on the vehicle himself. The van had last been carefully checked out, including the brakes, at Christmas. He said he drove into the driveway to visit a friend at the house, parked in front of the garage door, turned off the ignition, set the emergency brake, and left the car in gear. He said the emergency brake made a clicking sound when set. He did not lock the van and left the keys in the ignition. He described the grade of the driveway as 6 to 7%, the part by the garage was almost level and the remainder at a sharper angle. About two hours later he said he was informed of the accident by the driver of the first motorcycle. He went out into the street to give first aid, ran back to call the operator, then

returned to the victims. He said he saw no one suspicious near the van during this time. He testified that when he first left the house he noticed that the dome light was on in the van and the door was open a bit. He said that the dome light can only be activated by a switch. He remembered what he thought was a girl's voice telling him words to the effect that the guy in the van got away. He responded that it was his van and must have rolled down the driveway. After the ambulance came to the scene defendant went to the van and saw that the parking brake had been manually disengaged and that the gear shift was not in reverse.

A friend of the defendant who had been a passenger in the van said that when the van stopped she got out and walked around the front of it to the house door. She did not notice if defendant set the brakes and did not hear a clicking noise. She said that when they parked the dome light was off but after the accident when she went to the front porch she saw that the dome light was on in the van. Another friend of the defendant at whose house he was visiting said that after the accident the van door was ajar and the inside lights were on.

A directed verdict in favor of the plaintiff, McDonough, was granted on the issue of contributory negligence; the jury also found that the plaintiff, Senase, was not contributorily negligent.

### Res Ipsa Loquitur

■■ ■ Plaintiffs first argue that the trial judge should have granted a directed verdict in their favor based on *res ipsa loquitur*. This doctrine allows proof of negligence by circumstantial evidence when the direct evidence concerning the cause of the injury is primarily within the knowledge and control of the defendant. (See, *e.g.*, *Metz v. Central Illinois Electric & Gas Co.* (1965), 32 Ill. 2d 446, 449; *Fugate v. Sears, Roebuck & Co.* (1973), 12 Ill. App. 3d 656, 671.) The defendant argues *res ipsa loquitur* is inapplicable here because the van was not within the defendant's control, some two hours having elapsed since the vehicle had been left in a parked position in the driveway with its brake set. However, proof of control does not require proof of actual physical control at the time of the accident "if the instrumentality or dangerous agency is one which it is defendant's responsibility to maintain at all times * * *." (*Metz*, at 450; *Cobb v. Marshall Field & Co.* (1959), 22 Ill. App. 2d 143, 153-54; *Ostendorf v. Brewer* (1977), 51 Ill. App. 3d 1009, 1012.) A basic showing that defendant had parted with control of the instrumentality before harm struck is in itself insufficient to defeat a *res ipsa* claim. (*May v. Columbian Rope Co.* (1963), 40 Ill. App. 2d 264, 271-73.) Since defendant, as owner of the van, had the duty to maintain it, he had control of the van for *res ipsa* purposes.

■■ Nevertheless *res ipsa* is merely an inference of negligence arising from circumstantial evidence; it may be rebutted by proof of defendant's due care (*Cobb*, at 158), or by proof that the accident was caused by the intervention of someone or something else. See, *e.g.*, *Metz v. Central Illinois Electric & Gas Co.*, at 452. See also *House v. Stocker* (1975), 34 Ill. App. 3d 740, 742.

■■ Here, defendant has introduced proof of his due care. He testified that he set the parking brake and put the car in gear. He also introduced circumstantial evidence that the accident was caused by the intervention of third parties. While the evidence is close on this point, viewing it most favorably to the defendant there is some evidence that a third party may have caused the van to roll out into the street. Defendant stated he left the van in first gear, set the brake and firmly closed the door. There were no lights on in the van at that time. After the accident there was evidence that the van was in reverse, the brake manually disengaged and the door open. In addition, the dome light in the van was on, and it could only be activated by a manual switch. The evidence, of course, is not strong, because no one saw a thief or interloper near the van, but the evidence is sufficient to support the refusal to direct and to permit the case to go to the jury.

### Manifest Weight of the Evidence

■■ Again, although the case is not strong, we cannot say that the jury's verdict is against the manifest weight of the evidence. The jury could conclude from the circumstances that the defendant's testimony that he set the brake was credible inasmuch as there had been no apparent movement of the van for approximately two hours after it was parked. Similarly, the jury could have concluded from the testimony as to the dome light that someone had tampered with the van while the defendant and his passenger were in the house.

The plaintiff, Senase, also argues the jury's verdict is against the manifest weight of the evidence because the defendant owed the plaintiff a duty to park his vehicle with the proper care so that it would not roll down into the street. However, the same factual issues which we have discussed in connection with the directed verdict issue are relevant here. There was evidence that the defendant set the parking brake, which was in good condition. It was almost two hours later that the vehicle rolled into the street. There was circumstantial evidence from which the jury could conclude that the brake had been moved from a set position which, with evidence relating to the dome light and the door being ajar, could also create an issue of fact as to whether some person other than the defendant had activated the movement of the van.

We next consider the claims of prejudicial trial errors.

### The Instructions

Both plaintiffs argue that the trial court erred in giving his revised instructions rather than Illinois Pattern Jury Instructions, Civil, Nos. 21.02 (burden of proof on the issues) and 22.02 (*res ipsa loquitur* and specific negligence as alternative theories of recovery), incorporating No. 22.01 (*res ipsa loquitur*) (hereinafter cited as IPI). The judge refused the plaintiffs' tender of the IPI forms. Over objection, the judge changed IPI Civil No. 22.01 to state that the van *was* under the defendant's control, instead of choosing the phrase *had been*. In addition, the judge prefaced each of the instructions by reference to a count number in the complaint and added at the end of each:

> "In order to recover in this action the plaintiff, Michael Senase, must prove all of the propositions in at least one count. If you find from your consideration of all the evidence, that each of the propositions in either count has been proved, then your verdict should be for the plaintiff, Michael Senase. But if, on the other hand, you find from your consideration of all the evidence that there is no count in which all of the propositions have been proved, then your verdict should be for the defendant."

■■ Generally, the IPI instructions should be used whenever they accurately state the law, and only when they do not do so may the trial court give an alternate instruction which is not confusing or misleading. (*Ryan v. Fleischman* (1978), 64 Ill. App. 3d 75, 78. See also Ill. Rev. Stat. 1977, ch. 110A, par. 239.) We conclude that the tendered instructions IPI Civil Nos. 21.02 and 22.02, incorporating No. 22.01, accurately stated the law and that the trial court should have given IPI instructions rather than the modified form. The use of the *had been* as submitted seems clearer than "*was*." Defense counsel argued on several occasions that the fact that defendant was no longer driving the van and had left it for two hours indicated he was no longer "in control" of the van as required for *res ipsa loquitur*. But, as noted, control is an ongoing responsibility of the defendant, unless someone else has preempted actual control. Since defense counsel chose in his arguments to equate actual physical control with "control" for *res ipsa loquitur*, it was inaccurate to inform the jury that they must find the defendant "was" in control of the vehicle at the time of the accident, since it is undisputed that the van was no longer under the actual physical control of the defendant at that time. But more significantly the instruction as given was confusing in that it implied plaintiffs would have to prove all of the specific acts of negligence in count I in order to recover. The case presents an extremely close factual question and therefore should be decided by a properly instructed jury. *Ryan v. Fleischman* (1978), 64 Ill. App. 3d 75, 78.

We find that the other instructional errors alleged by the plaintiffs were either not well taken or were not prejudicial.

## Other Claimed Trial Errors

■■ Plaintiff McDonough objected to the reading of a section of Senase's deposition by defense counsel without any foundation testimony or without a limiting instruction. Although it is not proper procedure for an opposing counsel to read deposition testimony when the deponent is no longer on the stand and without establishing that the answer was actually made, the error in this case is harmless. This deposition testimony had already been read to the jury while Senase was on the stand and was acknowledged to have been made by him. This earlier testimony had been stricken because it was improper impeachment. Apparently, the trial judge changed his ruling on the impeachment issue. We hold that the failure to give a limiting instruction was harmless error because the deposition was essentially corroborative of Senase's trial testimony.

■■ McDonough also objects that the trial court limited his opportunity to clarify an alleged inconsistency between his testimony at trial and on deposition concerning his conversation with his doctor. The trial judge refused to permit him to explain the inconsistency on the theory that if he couldn't remember the answer he could not explain it. Even if a witness does not remember a specific answer he should be given an opportunity on redirect to explain the apparent inconsistencies. (*Clayton v. Bellatti* (1966), 70 Ill. App. 2d 367, 373-74.) However, the error involved testimony on a minor point and could not be said to have in itself substantially affected the verdict.

Plaintiffs also raise several objections to the closing arguments. On our examination of the record, we find that the allegedly improper arguments were either not objected to, and thus waived, or were within the permissible scope of argument.

## Judicial Conduct

■■ The plaintiffs argue that the trial judge showed partiality towards the defendant during the trial. We find from the record that there were instances when the judge was equally peremptory in dealing with all counsel and conclude that the trial judge's conduct during trial did not prejudice the plaintiffs.

■■ The plaintiffs also argue that the trial judge acted improperly after the closing of the evidence. After the jury was instructed but before deliberation, the jury was instructed to go to a particular restaurant. The trial judge also advised the attorneys that he would be at that restaurant. Both plaintiffs, defense counsel, and the judge ultimately ate or drank

either in the restaurant or its lounge. The plaintiffs introduced an affidavit of McDonough's attorney in support of their post-trial motion which included the statement that "subsequent to the Jury leaving and Affiant finishing his dinner he moved from the dining room to the adjacent cocktail lounge and observed the Trial Judge and the Defense Attorney * * * at the near end of the bar * * * that the floor plan of the Viking Restaurant was such that a person entering or exiting the premises or using the washroom facilities could readily see into the lounge area." Senase in an affidavit stated that the judge and defense counsel entered the lounge while the jury was still on the premises but he could not say the jury saw the judge and defense counsel at that time. Defense counsel introduced a contradictory affidavit which stated that he did not arrive or leave with the judge; that the jury did not see him or he the jury; and that at no time was he either with the judge or alone in the same room with the jury. He also introduced affidavits by the matron and bailiff stating that they did not see the judge and defense counsel together and that they were always in close proximity to the jury; that none of the jury went into the lounge or left the table; that they accompanied the jury when entering and leaving and they did not then see the defense attorney or the judge; that no one told the jury of their presence and that no one on the jury stated that they had seen the judge and defense counsel. We conclude that the trial judge properly denied a new trial on this ground. We state, however, that it would be far better practice to avoid any appearance of possible impropriety which could even suggest the issue here presented.

On the whole record we conclude that the evidence was sufficient to survive a motion for directed verdict and that the verdict was not against the manifest weight of the evidence. However, the circumstantial case which went to the jury was particularly dependent on proper instruction of the jury, and the plaintiffs should be unprejudiced by any significant trial error. The record does not assure us that this was the case. We therefore reverse the judgments and remand the consolidated cause for a new trial.

Reversed and remanded.

NASH and VAN DEUSEN, JJ., concur.