**Charles NEACE, Plaintiff–Appellant
and Cross–Appellee,**

v.

**Mark LAIMANS, Ford Brothers Van &
Storage, and Allied Van Lines, Inc., De-
fendants–Appellees and Cross–Appel-
lants.**

**Nos. 90–3370, 90–3453.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1991.

Decided Dec. 18, 1991.

Phillip S. Makin, Anne E. Larsen (argued), Chicago, for plaintiff-appellant Charles Neace.

James W. Tallant, Tallant & Associates, Ltd., Chicago (argued), for defendants-appellees Mark E. Laimans, Ford Bros. Van & Storage and Allied Van Lines, Inc.

Before CUDAHY and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

On September 18, 1986, a wheel and axle combination detached from a truck and struck Charles Neace's car. Although Neace was stuck in traffic at the time, the impact caused his body to strike certain interior components of the car. Neace brought a personal injury suit against Mark Laimans, the driver of the truck, Ford Brothers Van & Storage, the owner of the truck and an agent of Allied Van Lines, Inc., and Allied itself (collectively, "the defendants"). The district court, sitting in diversity and applying Illinois law, tried the case without a jury. The court

found the defendants liable to Neace in the amount of $125,000. Both sides appeal. Neace's appeal challenges the district court's award of damages on two grounds: that the court excluded evidence relevant to his medical condition, and that the court arbitrarily awarded only partial damages. In their cross-appeal, the defendants question the court's finding of liability under the doctrine of *res ipsa loquitur.* We affirm the judgment.

### Discussion

We first consider the cross-appeal, as the defendants' contentions regarding liability could, in theory, obviate any consideration of Neace's claimed errors regarding damages.

### 1. Cross-Appeal

The defendants argue that the trial court erred in applying the doctrine of *res ipsa loquitur* to this case, and further erred in holding that the defendants had not overcome the presumption of negligence supplied by the doctrine. *Res ipsa loquitur* allows a plaintiff to prove the defendant's negligence by circumstantial evidence "when the direct evidence concerning the cause of the injury is primarily within the knowledge and control of the defendant." *Senase v. Johns,* 96 Ill.App.3d 164, 51 Ill.Dec. 546, 549, 420 N.E.2d 1104, 1107 (2 Dist.1981). Common applications of the doctrine include situations where objects fall from the defendant's premises, or where objects under the defendant's control simply explode. *See generally* W. Page Keeton, *et al., Prosser and Keeton on the Law of Torts* § 39, at 244–45 (5th ed. 1984). In Illinois, the plaintiff is entitled to a presumption of negligence under *res ipsa loquitur* if the "thing which caused the injury is shown to be under the control or management of the party charged with negligence," and if "the occurrence is such as in the ordinary course of things would not have happened if the person so charged had used proper care...." *Metz v. Central Illinois Elec. & Gas Co.,* 32 Ill.2d 446, 207 N.E.2d 305, 307 (1965). The trial court determines whether this presumption is applicable as a matter of law. *Id.* The burden of proof then shifts to the defendant who may rebut the inference of negligence if he proves either that he exercised due care, or that "the accident was caused by the intervention of someone or something else." *Senase,* 51 Ill.Dec. at 550, 420 N.E.2d at 1108. This issue is for the fact-finder. *Metz,* 207 N.E.2d at 307.

In general, a wheel detachment is a hornbook *res ipsa loquitur* situation. *Prosser and Keeton* at 245; *see, e.g., Martino v. Barra,* 10 Ill.App.3d 97, 293 N.E.2d 745, 748–49 (1 Dist.1973). The defendants attempt to distinguish the axle fracture in the present case from wheel detachment cases; perhaps wheel detachments ordinarily involve negligence, the defendants argue, but axle fractures do not. Because Neace did not present any credible explanation for why the axle fractured, they continue, the detachment may have resulted from pure accident or from a faulty repair job undertaken by a non-party.

Even if we accept the defendants' attempt to distinguish axle fractures from wheel detachments, the present case does not involve an unexplained axle fracture and nothing more. The truck in this case had suffered a pair of axle accidents in the past, and the defendants were aware of the truck's repair history. Tr. at 444. Despite these prior mishaps, the defendants inspected the truck pursuant to a standard maintenance program designed for all trucks, not accident-prone ones. Tr. at 377. Therefore, even if typical axle fractures are accidental, it is reasonable to conclude that an axle fracture on a truck known to be susceptible to axle failures was the result of a negligent failure to inspect and maintain that truck. That is exactly what the district court held.

This case also differs from a typical *res ipsa loquitur* case in that it involves destruction of evidence which was crucial to the plaintiff's case. The defendants destroyed the relevant parts of the truck and some of the truck's maintenance records, preventing the plaintiff from providing any direct evidence to explain the axle fracture.

In some circumstances, willful destruction of evidence may provide an independent basis for inferring negligence. Illinois Supreme Court Rule 219; *Petrik v. Monarch Printing Corp.*, 150 Ill.App.3d 248, 103 Ill.Dec. 774, 784, 501 N.E.2d 1312, 1322 (1 Dist.1986). In this case, we believe that the destruction supports the application of *res ipsa loquitur*. *Cf. Prosser and Keeton* at 254–55 (noting that some courts have applied *res ipsa loquitur* only if evidence of accident was more accessible to defendant than plaintiff).[1] We affirm the district court's legal conclusion that *res ipsa loquitur* applies to the axle fracture in this case.

In addition, we affirm the district court's factual finding that the defendants did not rebut the inference of negligence. The defendants rely on *Sloan v. Nevil*, 33 Tenn.App. 100, 229 S.W.2d 350, 355–56 (1949), to argue that a court may not apply *res ipsa loquitur* when a latent defect could not have been discovered by *ordinary* inspections. The district court in the present case justifiably decided that this obviously fragile truck required *more than ordinary* inspections. *Sloan* reinforces the district court's finding of liability, which we affirm.

## 2. Appeal

At trial, Neace attempted to prove over a million dollars in damages due to wages lost and medical bills gained. Neace claimed that the accident in question caused him to develop Reflex Sympathetic Dystrophy Syndrome ("RSDS"), a rare and disabling disease caused by traumas to the body. That disease, Neace argues, has forced him to live a life of constant pain since the accident. He has had to abandon his trophy-engraving business and receive extensive and expensive medical treatment.

Neace further attempted to prove that because his condition will likely degenerate, the defendants should be liable for damages accruing well into the next century.

The district court found that Neace did not suffer from RSDS, and held that Neace's condition was largely the result of infirmities that predated the accident. These included a spinal problem that caused lower back and leg pain, a history of bronchitis which included chest pains, a chronic cough, and shortness of breath, as well as acute depression. The district court awarded Neace partial damages nevertheless, finding that the accident had exacerbated these pre-existing ailments. Thus, the court held that Neace was entitled to compensation for "some" of his lost wages, medical bills, and pain and suffering. R. 159 at 27. The court valued the damages at $125,000. Neace claims that this award was inadequate on two grounds.

First, Neace argues that the district court abused its discretion in excluding the testimony of two expert witnesses who would have supported a diagnosis of RSDS. The court apparently rejected this testimony because the plaintiff had not disclosed these witnesses' identities until the pre-trial order. Neace claims that the district court erred in holding that he had a duty to disclose their identities prior to the pre-trial conference. Neace relies on the fact that none of the defendants in this case ever propounded interrogatories requesting that he disclose the identities of expert witnesses. Rather, the only interrogatories on this subject had been propounded by parties who were dismissed from the case *prior* to Neace's decision to call these experts. Neace's answers to these interrogatories were complete when made, and, the argument goes, he had no duty under Fed. R.Civ.P. 26(e)(1)[2] to supplement those an-

---

1. Ironically, the defendants' destruction of evidence not only prevented Neace from proving negligence, but also prevented the defendants from proving that the accident was due to a third party's negligence, or to an accident.

2. The rule provides, in relevant part:
 "A party who has responded to a request for discovery that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:
 (1) A party is under a duty seasonably to supplement the response with respect to any question directly addressed to … (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony."

swers because the propounder of the interrogatories was no longer a party.

 According to the parties, no court has decided whether a party must supplement its answers to interrogatories posed by a party who has been dismissed from the case. We need not reach this question either. The exclusion of the doctors' testimony was harmless and did not affect "a substantial right of the party." F.R.Evid. 103(a). This expert testimony would have been irrelevant and cumulative.

At trial, the defendants argued that Neace suffered from a back condition that predated the accident, and that this unrelated condition accounted for most of his subsequent medical problems. The defendants' evidence consisted of x-rays showing that Neace had a spinal irregularity *before* the accident which was unchanged by the accident. This irregularity had caused back and leg pains on numerous occasions. Neace's treating physician, Dr. Bernard Edwards, ignored this pre-existing problem. Based on three main factors, he concluded that Neace suffered from RSDS. First, Dr. Edwards testified that RSDS caused constant and burning pain "out of proportion to the appearance" of the patient's injury. Tr. at 209. But Edwards admitted on cross-examination that he was unaware, until that moment, that Neace's spinal problem predated the accident; he had never seen the pre-accident x-rays in his three years of treating Neace. Tr. at 267. Dr. Edwards went on to concede that this pre-existing condition could have caused much of Neace's back and leg pain. Tr. at 267–72. Dr. Edwards' diagnosis next relied on the fact that "sympathetic blocks" applied to Neace's injuries had successfully dulled his pain. But Dr. Edwards again admitted that the pre-existing back problem was also consistent with this finding. Tr. at 278–86. And third, Dr. Edwards relied on the science of "thermography." Dr. Edwards conceded, however, that this technique is not generally accepted in the United States. Tr. at 265, 284–86. Dr. Edwards' testimony was also undermined by the defendants' chief witness on the issue of Neace's injuries, Dr. David

Petty. Dr. Petty testified that one of the "primary symptoms" of RSDS is bone atrophy. Based on his three examinations of Neace, he concluded that Neace showed no signs of atrophy. Tr. at 543–44. Strangely, Dr. Edwards also recognized that bone atrophy is a common symptom of RSDS, but he had not bothered to test for it. Tr. at 295.

The district court concluded that because there was no evidence of atrophy, Neace did not have any dystrophy, and therefore the accident was not solely responsible for the decline of his trophy business.[3] The court held that "there is *no* valid clinical evidence to support a diagnosis of RSDS." R. 159 at 26 (emphasis added). Despite this finding, Neace argues on appeal that it was error for the trial court to exclude the testimony of two doctors who would have testified not as treating physicians, but as experts on RSDS. With no valid evidence that Neace actually suffered from RSDS, however, the trial court did not need to be educated about the disease in the abstract. Thus, the exclusion of further expert testimony on RSDS by non-treating physicians did not prejudice Neace. *United States v. Whalen*, 940 F.2d 1027, 1033 (7th Cir.) (upholding exclusion of two expert witnesses' testimony regarding AIDS when "the testimony of neither expert was relevant to any fact in issue"), *cert. denied*, —— U.S. ——, 112 S.Ct. 403, 116 L.Ed.2d 352 (1991). Furthermore, Dr. Edwards held himself out as an expert on RSDS. He testified on the history and diagnosis of the disease. Tr. at 200–202. As a result, further expert testimony on RSDS would have been cumulative. *United States v. Nedza*, 880 F.2d 896, 903–04 (7th Cir.), *cert. denied*, 493 U.S. 938, 110 S.Ct. 334, 107 L.Ed.2d 323 (1989).

 Neace also challenges the district court's award of partial damages on the ground that the court ignored the evidence that Neace had fully recovered from his prior injuries, and that these injuries were unrelated to his current condition. This argument is meritless. The district court was sitting as a fact-finder on the issue of damages, and its determination cannot be

---

**3.** *According to a computer search, this is the only federal case involving trophy, atrophy, and*

dystrophy. *No federal cases have involved trophywort.*

disturbed unless the award was "manifestly inadequate" or bore "no reasonable relationship to the loss." *Hollis v. R. Latoria Const., Inc.,* 108 Ill.2d 401, 92 Ill.Dec. 449, 451, 485 N.E.2d 4, 6 (1985). In the present case, the amount of damages was genuinely disputed. In making its award, the trial court noted that after the accident, Neace was well enough to decline first aid, to drive away from the accident, and to delay medical care until the next day. In addition, the trial court was entitled to conclude that Neace had not completely recovered from his previous and recurring ailments. Finally, the plaintiff's own witness admitted that Neace's pre-existing back condition could have been responsible for some of his pains. Tr. at 266–72.[4] The trial court's factual determination resolved a genuine conflict and cannot be overturned on appeal. *Cf. Daly v. Vinci,* 51 Ill.App.2d 372, 201 N.E.2d 200 (1 Dist.1964) (reversing low damage award because defendant had presented no evidence on question of damages). We affirm the district court's award of $125,000 in damages.

### Conclusion

For the reasons stated, we AFFIRM both the district court's finding of liability and its award of damages.

---

**4.** In light of this admission, Neace cannot benefit from *Marut v. Costello,* 34 Ill.2d 125, 214 N.E.2d 768, 769 (1965), in which there was no evidence to connect the two injuries.