Richard and Sandra FINCHUM,
Plaintiffs–Appellants,

v.

FORD MOTOR COMPANY and
Kia Motors Corporation,
Defendants–Appellees.

Nos. 94–2277 & 94–3947.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 10, 1995.

Submitted May 8, 1995.[1]

Decided June 8, 1995.

---

1. Appeal No. 94–2277 was argued on January 10, 1995. The Finchums' later appeal, No. 94–3947, was submitted to the same panel for decision under Operating Procedure 6(b). The panel deferred disposition of No. 94–2277 until the briefing had been completed in No. 94–3947. The panel has determined that further oral argument is unnecessary in No. 94–3947, which concerns the award of costs in the trial forming the basis for appeal No. 94–2277, and has consolidated the two appeals for disposition in a single opinion.

Peter C. King, J. Kevin King (argued), Cline, King & King, Columbus, IN, Tom G.

Jones, Jones, Drury & Hoffman, Franklin, IN, for plaintiffs-appellants.

Wayne C. Kreuscher (argued), Joseph C. Chapelle, Barnes & Thornburg, Indianapolis, IN, Donald H. Dawson, Jr., Kathleen A. Clark, Ernest R. Bazzana, Plunkett & Cooney, Detroit, MI, Sarah J. Goldberg, Ford Motor Co., Office of the General Counsel, Dearborn, MI, for defendants-appellees.

Before ESCHBACH, COFFEY, and RIPPLE, Circuit Judges.

ESCHBACH, Circuit Judge.

Richard and Sandra Finchum were waiting in their 1989 Ford Festiva to make a left turn at an intersection when their car was rear-ended. To recover for the injuries they suffered due to their car's allegedly defective design, the Finchums sued their car's makers, Ford Motor Company ("Ford") and Kia Motors Corporation ("Kia") in diversity under Indiana law. After a jury verdict in favor of the defendants, the Finchums appealed from the jury verdict, primarily on the basis of certain evidentiary rulings, and from the district court's award of costs. Because we do not find that the district court judge abused his discretion in making those rulings, we affirm.

## I.

On March 6, 1990, the Finchum's 1989 Ford Festiva was rear-ended while the Finchum's were waiting to make a left turn at an intersection in Columbus, Indiana. David Allway was driving his car approximately 25–31 miles per hour when it hit the Finchum's car. The Festiva was jolted forward with a resultant change of velocity ("delta v") of approximately 16–19 miles per hour. The force of the collision caused the Festiva's seats to release from the seat tracks and rotate rearward. As a result, the Finchums, who were wearing their seatbelts, remained in their seats, but the position of the seat left them lying on their backs. After the wreck, Mr. Finchum unbuckled his seat belt and attempted to walk around the car to check on

his wife. Stiffness in his legs, however, hampered his walking and he experienced additional pain in his shoulders, back and calves. With the assistance of the medics, Mr. Finchum was able to ride to the hospital sitting up. He was released after being given pain medication.

Soon after the wreck, Mr. Finchum returned to his position as a master plumber. He experienced difficulties, however, with his walking and balance and he saw various health care providers in an attempt to remedy this condition. He was only able to continue working through the assistance of his co-workers. Eventually, the discovery that several discs were bulging into his spinal column forced him to quit working and undergo surgery in November 1990.

In March 1992, the Finchums brought this action in state court and the defendants removed it to federal court. On July 21, 1993, the court granted the Finchums leave to amend their complaint to add a punitive damages claim. Before trial, the Finchums elected to proceed solely on the issue of strict liability, dismissing their claims of negligence and breach of warranty. The case was tried to a jury from April 18 until April 28, 1994. At the close of the Finchums' case, the defendants' motion for judgment as a matter of law was granted as to the Finchums' punitive damages claim. The jury returned a verdict in favor of the defendants and the Finchums filed a timely notice of appeal.

## II.

### A. Appeal No. 94–2277

■ This appeal rests almost exclusively on the propriety of certain evidentiary rulings made by the district court judge during the course of the trial.[2] Although this is a diversity case under Indiana law, the evidentiary issues raised by the Finchums are governed according to federal law. *See Klonowski v. International Armament Corp.*, 17 F.3d 992, 995 (7th Cir.1994). The Finchums are faced with "an onerous burden 'because a reviewing court gives special deference to the

---

2. The Finchums also appeal the district court's decision to grant judgment as a matter of law in favor of the defendants on the issue of punitive

damages. Given our resolution of the other issues in this case, however, we need not reach that question.

evidentiary rulings of the trial court.'" *Berry v. Deloney,* 28 F.3d 604, 607 (7th Cir. 1994), (quoting *Ross v. Black & Decker, Inc.,* 977 F.2d 1178, 1183 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1274, 122 L.Ed.2d 669 (1993)). We review the rulings for an abuse of discretion. *Trytko v. Hubbell, Inc.,* 28 F.3d 715, 724 (7th Cir.1994). This standard "is met only when the trial judge's decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based that decision, or where the supposed facts found are clearly erroneous." *Berry,* 28 F.3d at 607 (quoting *Ross,* 977 F.2d at 1183). Even where an error is demonstrated to exist, our review under Federal Rule of Civil Procedure 61 is limited to those errors which affected the substantial rights of the parties. *See Klonowski,* 17 F.3d at 995.

### 1. Certain Expert Testimony of Dr. Saczalski

The Finchums called Dr. Kenneth Saczalski, an expert in accident reconstruction and biomechanics, to testify as to the alleged unreasonably dangerous design of the Ford Festiva's seats and the availability of safer alternative designs at the time the defendants manufactured the Finchums' car. Saczalski also opined that a manufacturer's compliance with the Federal Motor Vehicle Safety Standard for seat design (FMVSS 207) does not indicate the adequacy of the manufacturer's seat design given the minimum nature of the federal standard. Although Saczalski was permitted to testify at length, the Finchums challenge certain evidentiary rulings the district court made during his testimony.

### a. Exhibit 593

■ The Finchums sought to introduce a videotape depicting two dynamic sled tests conducted by Saczalski. In the video, two car seats are attached to a platform sled. One seat is a production seat and the other seat is a rigidized seat Saczalski modified to demonstrate his alternative design. A crash test dummy occupies each seat, but, unlike the Finchums, neither is wearing a seat belt.

In each crash sequence, as the sled is pulled into a barrier to simulate a rear-impact, the dummy in the production seat flips backward, somersaulting through the air. The district court judge granted the defendants' motion in limine with regard to the exhibit because of its "highly prejudicial" nature. *See* Fed.R.Evid. 403. The Finchums argue that exhibit 593 was not designed to be similar to the accident, but rather to illustrate principles used to form Saczalski's opinions regarding the feasibility of alternative designs using more rigid seats. The Finchums also contend that they offered to cut that portion of the videotape which showed the production seat dummy somersaulting backward.

The district court judge did not abuse his discretion in excluding this exhibit. The sled test was just similar enough to the Finchums' accident to confuse the jury and leave jurors with the prejudicial suggestion that the Finchums flipped over backwards during the crash. *See Fusco v. General Motors Corp.,* 11 F.3d 259, 264 (1st Cir.1993) ("the issue for us is whether the demonstration is sufficiently close in appearance to the original accident to create the risk of misunderstanding by the jury"); *Four Corners Helicopters, Inc. v. Turbomeca, S.A.,* 979 F.2d 1434, 1442 (10th Cir.1992) (experiment used to illustrate mechanical principles should not be so similar as to confuse the jury). The Finchums' offer to cut some portion of the video does not minimize the prejudicial effect. The offer was not made during the offer to prove and it is not clear exactly where the video could stop while still depicting the rear-end impact without undue prejudice. Saczalski admitted that the lack of seat belts created more "ramping," where the dummy slides up the seat back, and "rebound," where the dummy's body hits some object in the rear and bounces back up toward the roof. Nor does the probative value of the video outweigh the prejudicial effect even if the offer to cut the video had been feasible. Saczalski testified at a number of points during the trial as to his opinion that a rigid seat was both feasible and superior to the Festiva's design and he commented on other videos provided by Ford. Further evidence would have been

cumulative. *Neace v. Laimans,* 951 F.2d 139, 143 (7th Cir.1991).

#### b. Exhibit 1211

■ This exhibit consisted of a composite set of photographs from the Finchum sled test in exhibit 593 mounted below photographs of a sled test performed by the defendants. In both sets of pictures, the crash dummy had moved up the back of the seat during the initial stages of the collision. It was offered to illustrate the physical principles of the accident and to demonstrate that the presence or absence of seat belts had no effect in a rear-end collision. This exhibit was properly excluded on grounds of relevance. The point in dispute was whether rigid seats would have better protected Mr. Finchum from the effects of contact with the rear seat back. To the extent that the Finchums sought to demonstrate to the court that the absence of seat belts in exhibit 593 was irrelevant, exhibit 1211 would have been misleading since the crash dummy in the Finchums test eventually flipped over backwards as a result of not having a seat belt.

#### c. Exhibit 1202

■ During Saczalski's testimony, the Finchums sought to introduce evidence regarding the Secretarial Seating Chair Standards to demonstrate the relative inadequacy of FMVSS 207 by comparison. The district court judge correctly determined that this evidence was not relevant to the Finchums' claim. The adequacy of FMVSS 207 can hardly be tested by comparison with the standards for different types of seats subject to different stresses and risks and the Finchums made no attempt to establish that the evidence was "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed.R.Evid. 703. In any event, Saczalski testified as to the inadequacy of

FMVSS 207 and this evidence, like exhibit 593, would have been cumulative. *See Neace,* 951 F.2d at 143.

#### d. Evidence relating to Starcraft Automotive's alternative design

■ During Saczalski's testimony, the district court excluded evidence of an alternative seat designed by Starcraft Automotive in 1992 for installation in vans Starcraft customized for resale in 1993. Saczalski testified that this design demonstrated the feasibility of alternative seats because Starcraft utilized technology available in the 1970s. Later, the Finchums sought to introduce the deposition summary of Grant Farrard, a Starcraft employee, and two Starcraft videos depicting the performance of the alternative design. Since, however, Starcraft's design was only created in 1992, and was not implemented until 1993, it cannot demonstrate the state of the art technology available when the Finchums' 1989 Ford Festiva seats were designed.[3] As such, the exhibit could not have had any tendency to make the existence of a fact which is of consequence to the determination of the case "more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

#### e. Exhibit 1210

■ The Finchums sought to introduce into evidence an article published June 4, 1974 by D. Burland of Ford on the subject of "Occupant Protection in Rear Impacts," to demonstrate Ford's notice of the need for alternative seat designs. The district court judge upheld the defense's objection that the exhibit constituted hearsay and could not be received as an exhibit for the jury under either the learned treatise exception to the

---

**3.** The Finchums contend that Farrard's deposition summary and exhibits 1167 and 1168 were also proof of causation and impeachment or rebuttal evidence for the testimony of the defendants' expert that rigid seats could increase the risk of injuries. However, when the Finchums moved to introduce this evidence, counsel for the Finchums asserted, "our position is it utilized technology from the '70s. It obviously makes it very clear that particular technology was available, could be used by a manufacturer." Tr. Addendum B–4. Thus, the district court was never given the opportunity to consider the evidence for other purposes. In any event it was not plain error to exclude this evidence for such purposes given the limited relevance a seat designed for a customized van has for a passenger car. Tr. 381.

hearsay rule[4] or under Rule 703. Under Rule 803(18), statements contained in a published periodical which are relied upon by an expert witness may be admitted, but they must be read into evidence rather than received as exhibits. Under Rule 703, experts can base their opinions on information of the type reasonably relied upon by experts, but this "does not automatically mean that the information itself is independently admissible in evidence." *Gong v. Hirsch*, 913 F.2d 1269, 1273 (7th Cir.1990). Although Saczalski might have been permitted to state that he relied upon the exhibit in forming his opinion, the Finchums could not have introduced the exhibit into evidence because of the hearsay rule. Moreover, even if this evidence could have been introduced as an exhibit, it would have made little difference since the defense never contended that alternative designs were not feasible or that their design contained no risks; rather, they argued that the rigid seats suggested by Saczalski would produce a greater incidence of injuries.[5] *See Klonowski*, 17 F.3d at 995.

### 2. Expert Testimony of David Biss

■■■ The Finchums proposed to call David Biss, a former employee of the National Highway Traffic Safety Administration, to testify regarding certain aspects of the regulatory process in enacting and modifying FMVSS 207. Biss would purportedly tell the jury how Ford, along with other auto manufacturers, had submitted comments on proposed changes to FMVSS 207 which helped prevent the adoption of those changes. Not only is such testimony irrelevant and of questionable usefulness as expert testimony, but it would have been unduly prejudicial. *See* Fed.R.Evid. 401, 702, and 403. The testimo-

ny risked confusing the jury as to the applicable standard and it suggested that the defendants had somehow engaged in inappropriate conduct by participating in the regulatory process. The Finchums were able to emphasize the minimal nature of FMVSS 207 without resorting to drawing inferences from the manner in which the regulatory process was conducted.

### 3. Certain Portions of the Deposition Summary of Lee Jardine

■■■ The Finchums proposed reading to the jury a summary of the deposition of Ford employee Lee Jardine. The district court judge excluded two portions of the summary. One portion discussed a manufacturing problem causing seat track misalignment in the passenger seat of the Festiva. The Finchums' car, however, was not suffering from any misalignment problem. Nor did anyone testify that the misalignment problem was at all related to the alleged seat design defect. The second portion of Jardine's deposition summary which was excluded related to a 1990 design change in the Festiva which caused an additional metal bracket to be added to the seat track. This bracket, which was installed to meet a newly-adopted Federal Motor Vehicle Safety Standard for the 1990 models, anchored a passive restraint where the seat tracks connected to the floor. The Finchums, however, presented no evidence that the addition of a metal bracket to the seat track did anything to improve the performance of the Festiva's seats in a rear-impact collision. Rather than being a subsequent remedial measure, the evidence of which might have been admitted if the defendant had denied its feasibility, *see* Fed.R.Evid. 407, this change was an unrelat-

<hr>

4. In support of its objection, the defense cited Rule 717 as the learned treatise exception to the hearsay rule. Although no such number exists, the learned treatise exception to the hearsay rule is contained in Rule 803(18). This rule provides as follows:

> To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the

testimony or admission of the witness or by other expert testimony or judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

5. This is not to say that the defense did not offer evidence that the alternative seats did not work as well as the Finchums suggested, just that the defense never contended that the Finchums' design was not technically feasible or available. Even Saczalski admitted that there were two schools of thought on the question of rigid versus yielding seat backs.

ed design modification which happened to take place near the area of the alleged design defect.

### 4. Certain Portions of the Deposition Summaries of Tony Nucci, Donald Sippel, and Rudolph Persico

■ Through the deposition summaries of three Ford employees, Nucci, Sippel, and Persico, the Finchums sought to admit evidence of seat track and/or seat back problems in Ford vehicles to establish Ford's notice of these problems. The district court judge granted the defendants motion in limine "except as to incidents involving Ford Festivas prior to March 6, 1990." As to the judge's limiting the evidence to incidents involving Festivas, the Finchums argue that identical conditions are not required for proof of causation and no requirement of substantial similarity is imposed when the evidence is being introduced for purposes of notice. *See Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 n. 9 (7th Cir.1988). The evidence excluded in *Nachtsheim*, however, involved an identical model of airplane in an accident under somewhat different conditions. *Id.* at 1266–67. Thus, it was the requirement of similarity for the accident, not for the vehicle involved, which the court suggested might be relaxed when offered for proof of notice. *Id.* at 1268 n. 9. In the instant case, the Finchums sought to introduce evidence of customer complaints concerning non-Festiva Ford cars where many of the complaints did not even involve seat back or seat track problems. The district court judge did not abuse his discretion in excluding such evidence as irrelevant.

■ The Finchums also argue that evidence of incidents occurring after March 6, 1990 should have been admitted to show causation. Here, however, the Finchums do stumble on the requirement of demonstrating substantial similarity of the accidents. "The foundational requirement that the proponent of similar accidents evidence must establish substantial similarity before the evidence will be admitted is especially important in cases such as this where the evidence is proffered to show the existence of a dangerous condition or causation." *Nachtsheim*, 847 F.2d at

1268. Only one incident, which involved a rear-impact crash and the collapse of the seat back, might have survived this requirement of substantial similarity. However, we cannot say that it was an abuse of discretion to exclude this evidence since no showing was made as to the other circumstances of the accident, such as speed of impact and severity of injury. Furthermore, the omission could not have seriously prejudiced the Finchums since the defendants' position was that the seats needed to respond in that manner in order to avoid more serious injury.

### B. Appeal No. 94–3947

After the jury verdict, the defendants filed their bill of costs in the amount of $45,940.62 which was taxed by the Clerk. The Finchums filed their motion objecting to such taxation of costs and moved that the costs be retaxed in the amount of $120.00. In their response to the Finchums' motion, the defendants revised their claim downward to $30,858.94 and supplied additional documentation for the revised claim. The Finchums asserted that this revision should be stricken, but the district court rejected the argument as frivolous. On November 9, 1994, the district court allowed the defendants costs in the sum of $25,007.84. The Finchums appeal from several aspects of this award.

■ Under Rule 54(d) of the Federal Rules of Civil Procedure, the presumption is that the prevailing party will recover costs, and the ultimate decision to award costs is within the district court's discretion. *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1409 (7th Cir.1991). "Thus, we review carefully whether an expense is recoverable, but when we determine that it is, we defer to the district court, which 'is in the best position to determine the reasonableness of the cost.'" *SK Hand Tool Corp. v. Dresser Industries Inc.*, 852 F.2d 936, 943 (7th Cir. 1988), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3241, 106 L.Ed.2d 589 (1989), (quoting *Illinois v. Sangamo Constr. Co.*, 657 F.2d 855, 864 (7th Cir.1981)).

■ Initially, the Finchums contend that the district court abused its discretion in considering the defendants' revised claim for

costs and supporting documentation because it was made in a response brief and without being taxed by the Clerk. The district court committed no abuse of discretion by permitting the defendants to revise their request downward and add supporting material in response to the Finchums' arguments. *See M.T. Bonk Co.*, 945 F.2d at 1410. To argue otherwise would be to impose upon the district court the burden of paring down costs which the defendants themselves, after reflection, have agreed not to pursue. The Finchums also contend that the district court failed to state whether the costs awarded were reasonably necessary. A review of each item, however, indicates that this factor was appropriately considered at all times by the trial judge.

■ The district court awarded the defendants $2,536.89 for copies of papers necessarily obtained for use in the case. The papers included copies of medical records and pleadings. These costs are clearly allowable. *See M.T. Bonk*, 945 F.2d at 1410. The Finchums claim that there was no evidence that the medical records were necessary for use in this case, but the district judge was in the proper position to evaluate this claim. The Finchums also challenge the award for the pleadings, but the reasonableness of this amount is readily apparent. The district court charged the Finchums for the copies of the pleadings which they requested for themselves and their local counsel, at a price, ten cents a page, which was well within the market prices attested to by the Finchums' affiant for the size of documents involved in each pleading. There was no abuse of discretion in this award.

■ The district court, after making certain reductions in the defendants' request, also awarded $22,230.95 for the costs of taking depositions. The Finchums' main protest is that there was no determination that each deposition was necessary, in that several of the deponents were never called to testify. We have consistently maintained that costs may be awarded for deposing a witness who is not called at trial as long as the deposition was necessary when taken. *M.T. Bonk*, 945 F.2d at 1410 (citing *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237, 1243 (7th Cir.

1985); *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697, 701–02 (7th Cir.1989); *Sangamo Constr. Co.*, 657 F.2d at 867. The district court found that the complexity of the case from both a medical and engineering standpoint, and the corresponding preparedness of the attorneys, necessitated the costs of the taking of the depositions in question. The Finchums' further challenge the award of costs "incidental" to the taking of the depositions, claiming these costs, such as per diem and delivery charges by the court reporter, are not specifically mentioned in the statute. We have, however, upheld the award of such costs in the past and we find no reason to disturb the district court's exercise of discretion to award such costs in this instance. *See SK Hand Tool Corp.*, 852 F.2d at 944 n. 10.

Therefore, given the able and experienced district court judge's intimate knowledge of the complexities of the case, we find no abuse of discretion in his determinations of reasonableness and necessity of each item awarded. *See Sangamo Constr. Co.*, 657 F.2d at 867. Any overreaching which may have been present in the defendants' initial request for costs was amply confined by the defendants' own downward revision of their request and the district court's careful consideration in its order.

### III.

For the reasons above, both the judgment of the district court in Appeal No. 94–2277 and the award of costs in Appeal No. 94–3947 are AFFIRMED.