NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted February 10, 2010[*]
Decided February 11, 2010

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 08-3130

| | |
|---|---|
| MICHAEL L. BROWN, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 04 C 1288 |
| CITY OF NORTH CHICAGO and WAUKEGAN TOWNSHIP, | Donald E. Walter,[**] |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Michael Brown sued North Chicago and Waukegan Township under the Americans with Disabilities Act, *see* 42 U.S.C. §§ 12101–213, but a jury found against him. Brown appeals an evidentiary ruling that excluded a letter written by a North Chicago

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

[**]United States District Judge for the Western District of Louisiana, sitting by designation.

commissioner.  The district court was well within its discretion under Federal Rule of Evidence 403 to determine that the probative value of the letter was substantially outweighed by a risk of unfair prejudice, and in any event, the letter would not have affected the outcome of the trial.  We affirm.

Brown's suit stemmed from his participation in EarnFare, a voluntary program administered by the Illinois Department of Human Services that allows eligible food-stamp recipients to gain skills and become self-sufficient by "working off" the value of their benefits each month.  Waukegan Township determines EarnFare eligibility and assigns participants to worksites.  Waukegan Township assigned Brown to North Chicago's Street Department to perform manual labor.

At trial, the parties disputed what day Brown notified the Street Department of his disability and what tasks the Street Department assigned Brown to perform during his short tenure.  Brown testified that before starting work on October 1, 2003, he informed the Street Department commissioner that he suffered from a heart condition and was assured that he would only be picking up litter.  But in fact, Brown continued, he was maliciously given more arduous tasks that he couldn't perform because of his heart condition.  The last straw occurred on October 8, Brown explained, when the Street Department foreman instructed him to separate pieces of asphalt from pieces of concrete.  According to Brown, he went straight to the commissioner to remind him of his disability and to request, as an accommodation, that his assignments be limited to picking up litter.

North Chicago's witnesses challenged Brown's story.  The foreman testified that he never instructed Brown to separate asphalt from concrete.  The commissioner testified that Brown did not inform him that he suffered from a disability until October 8 and never requested an accommodation.

The parties agreed that after Brown told the commissioner about his disability on October 8, the commissioner immediately notified Waukegan Township, which told Brown to reapply to EarnFare because his current application did not disclose any disabilities. Brown never reapplied to EarnFare or returned to the Street Department.

In order to bolster his disputed testimony about his assignments and impeach the credibility of North Chicago's witnesses, Brown sought to introduce into evidence a letter that the commissioner wrote to the Waukegan Township supervisor in January 2004.  The letter was written in response to a notice the commissioner received from the Equal Employment Opportunity Commission concerning Brown's allegations of discrimination and contained the following sentence: "On October 8th, the Street Department Foreman,

Gabriel Albarran, gave Mr. Brown a job assignment to separate black top and concrete chunks."

Waukegan Township objected, and the district court ruled that the commissioner's letter should be excluded under Federal Rule of Evidence 403 because it was written three months after the events giving rise to Brown's allegations and because it might prejudice Waukegan Township by suggesting a cover-up conspiracy between the two defendants. Nevertheless, the district court allowed Brown to question the commissioner about the facts contained in the letter. The commissioner testified that he had no personal knowledge whether the foreman had assigned Brown to separate asphalt from concrete. The district court denied Brown's request to impeach the commissioner by introducing the letter, describing its contents as hearsay.

Brown argues on appeal that the district court erred because the commissioner's letter was admissible under Federal Rule of Evidence 801(d)(2)(D). That rule provides that a statement is not hearsay if it was made by an agent of the party against whom it is offered, concerns a matter within the scope of the agency, and was made during the existence of the agency. *See Mister v. Ne. Ill. Commuter R.R. Corp.*, 571 F.3d 696, 698–99 (7th Cir. 2009).

But evidence that is admissible under Rule 801(d)(2)(D) may nevertheless be excluded under Rule 403 if its probative value is substantially outweighed by a risk of unfair prejudice. *Mister*, 571 F.3d at 699. The district court gave little explanation for excluding the commissioner's letter under Rule 403, but we do not think it was an abuse of discretion to sustain Waukegan Township's objection. It was not unreasonable for the district court to fear that the letter could confuse the jury and unfairly prejudice Waukegan Township by suggesting that the township knew about or concealed evidence regarding Brown's disputed tenure at the Street Department. *See Finchum v. Ford Motor Co.*, 57 F.3d 526, 532 (7th Cir. 1995) (upholding exclusion under Rule 403 of evidence suggesting defendant had engaged in inappropriate conduct not at issue). And the probative value of the letter is limited because it was prepared three months after the events it describes, *see Grassi v. Info. Res., Inc.*, 63 F.3d 596, 602 (7th Cir. 1995) (upholding exclusion under Rule 403 of records prepared six months after events at issue), and because the relevant passage is based on hearsay and appears only in a paragraph summarizing Brown's allegations, *see Mister*, 571 F.3d at 699. These concerns adequately justify the district court's determination that the letter should be excluded under Rule 403.

But even if Brown could show that the district court erred by excluding the commissioner's letter, his appeal would still fail because any error was harmless and would not have affected the outcome of the trial. *See Alverio v. Sam's Warehouse Club, Inc.*, 253 F.3d

933, 943 (7th Cir. 2001). As we explained above, the probative value of the letter is scant at best. We must strain to interpret the relevant passage as the damning admission Brown urges. We do not think the jury would have credited Brown's testimony about the disputed assignments if only the commissioner's letter had been admitted.

Brown's remaining arguments are quickly dismissed. There is no Sixth Amendment right to counsel in a civil case. *Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001). Any claim Brown may have against Waukegan Township under the Freedom of Information Act was not presented at trial and is not properly before this court. And although Brown lists other issues for review, he does not develop them in his opening brief, so those arguments are waived. *See Bodenstab v. County of Cook*, 569 F.3d 651, 658 (7th Cir. 2009).

AFFIRMED.